**Isabel OTERO, Plaintiff,**

**v.**

**HOUSING AUTHORITY OF the CITY OF BRIDGEPORT, et al., Defendant**

**No. CIV. 3:98CV1935(PCD).**

United States District Court, D. Connecticut.

April 23, 2001.

John T. Bochanis, Daly, Weihing & Bochanis, Bridgeport, CT, for Isabel Otero, plaintiff.

Thomas P. O'Dea, Jr., Halloran & Sage, Westport, CT, for Bridgeport Housing Authority, Clarence Craig, Joseph Papa, Jose Colon, Roy Boyd, Anita Wells, Earl Mellow, defendants.

## ORDER RE: PENDING MOTIONS

DORSEY, Senior District Judge.

Plaintiff claims her employer, "BHA," Craig, and Papa, terminated her employment in violation of her due process right. At the conclusion of plaintiff's direct case, her claims against co-defendants Mellow, Boyd, Colon, and Wells a/k/a Falco, all BHA employees, were dismissed. Remaining defendants also then moved for judgment pursuant to Fed.R.Civ.P. 50(b), and did so again at the conclusion of their case. Decision was reserved in both instances. A plaintiff's verdict prompted the pending motions: 1) BHA's for Judgment Notwithstanding the Verdict; 2) BHA's for a New Trial or for Modification of Judgment; 3) plaintiff's for front pay and prejudgment interest; and 4) plaintiff's for Attorney Fees and Costs.

FACTS:

For consideration of the motions, the facts are recited as admitted in the parties' Trial Preparation Order (TPO) compliance and as based on the evidence admitted at trial, construing same favorably to plaintiff in all respects.

Plaintiff was a BHA employee from 1981, covered by a union contract. Ex. 1. In September 1996, she supervised Messrs. Colon and Boyd, with maintenance responsibility for Green Homes, a Housing Project consisting of several residential buildings. On July 23, 1996, at Mr. Boyd's request, plaintiff initiated acquisition of a toilet for Green Homes by writing, signing and delivering to Edson D'Oliviera, the custodian at BHA's warehouse, a requisition for a toilet bowl, tank and seat. Ex 51. The stock number of the items requested pertained to a Kohler down flush toilet, which drained through the floor. The only toilets used in the Green Homes project were back flush type, made by Crane, which drained through the wall. Plaintiff claims Mr. D'Oliviera supplied the stock number and that she took no notice of, nor did she specify, the toilet type received, but did tell him what she needed. Plaintiff acknowledged receipt of the items by signing the requisition, of which she received a copy. Plaintiff normally retains and files her copies of requisitions but could not find her copy of Ex. 51. The items were placed in the rear of Mr. Colon's truck, he having accompanied her to the warehouse. Plaintiff says she got an urgent call from her supervisor, Ms. Wells/Falco, and went to her office to meet her, leaving Mr. Colon to take the items to Green Homes where they were to be assembled and installed in an apartment. Plaintiff claims no knowledge of what happened to the items thereafter. A work order customarily records and authorizes such installation and is made out by the maintenance person doing the work and given to her so as to account for the time involved. Plaintiff retains work orders

and files them monthly. No work order could be found for the installation of the toilet in question. After being apprised of the charge of theft of the toilet, plaintiff looked for the toilet with Wells at Green Homes. It was never found. Plaintiff heard about the matter on September 11, 1996 when she was called into the office of Mr. Craig, BHA's Executive Director. Mr. Carrafiello, the union president, was there, as was the investigator, Mr. Mellow. Although plaintiff claims that she was not informed of the charge against her, she stated as an uncontested fact that, at that meeting, Mr. Craig informed her "that he had substantial evidence that [she] stole a toilet seat, toilet tank, toilet bowl and bathroom vanity from the Housing Authority." Plaintiff's TPO Compliance, 10/19/00, p. 4. She thus knew she was accused of taking a toilet and that if she did so she was subject to immediate dismissal. On direct she stated that she was then told only that if she did not resign by September 13, 1996, she would be terminated. She requested no extension of time to obtain evidence. After the September 11 meeting, she attempted to discuss the matter with Boyd and Colon but neither was amenable to doing so. At the September 13 meeting, attended by Mr. Papa, Mr. Carrafiello, and Mr. Mellow, plaintiff was asked if she had decided to resign. When she refused, she was terminated. She filed a grievance claiming termination without cause. A meeting was held on September 26, 1996 attended by her union representative, Ms. Johnson, and Mr. Carrafiello. Plaintiff was not given copies of the statements taken by Mellow nor of his report, nor was she interviewed.

On cross-examination, plaintiff testified that spare toilets for Green Homes were kept in the project's maintenance storage in Building 1. Normally plaintiff checked there for items needed before requisitioning. She did not do so on July 23 and thus did not know if replacement toilets were then in maintenance storage. Plaintiff's residence has a bottom flush toilet. There was no need for a bottom flush toilet at Green Homes. Plaintiff claimed not to know that the toilet requisitioned was a bottom flush toilet. Mr. Colon was not the source of information as to what was requisitioned. Normally plaintiff checked in a book for the stock number of what was being requisitioned. Although not given copies, she was told of the statements of Boyd, Colon, and Wells, which she denied. Plaintiff admitted being told she could prove otherwise and avoid being terminated. The requisition for a vanity (Ex. 52), which she admitted receiving, notes an apartment number, as was her practice, but no apartment number was noted on Ex. 51. At her deposition, and at trial, plaintiff testified that Craig asked her to provide proof that she had not taken the toilet. From September 11 to September 13 plaintiff had an opportunity to produce any proof. She produced none at the September 13 meeting. At the September 26 meeting, after the grievance was filed, Ex. 33, plaintiff conferred with her union representative, Ms. Johnson, and the President, Mr. Carrafiello, who had reviewed the information provided by the BHA. It was their recommendation that plaintiff resign to preserve her pension rights, which she would lose if she were terminated for cause. Plaintiff thereupon signed and tendered her resignation. Ex. U. She was never told she could not offer proof. She was permitted to resign and thus was not terminated by the BHA for cause. On September 12, she told Wells that if she lost her job she was "going to fuck some one up."

Plaintiff's story was substantially contradicted. Per Mr. Mellow after he completed his investigation of the matter, plaintiff was called into Mr. Craig's office where

the statements given by Messrs. Boyd and Colon and Ms. Wells/Falco, Exs. 54, 55, and 56 were read to her. Mellow's report, Ex. 53, and the statements were provided to the union representatives who, according to Mr. Carrafiello, discussed their contents with plaintiff. In the presence of plaintiff, Ms. Johnson, and Mr. Carrafiello, Boyd and Colon repeated their statements, and Mr. D'Oliviera stated what he knew. Ms. Wells/Falco was called in, but the union representatives adjourned with Mr. Craig.

They came back with the proposal that plaintiff be allowed to resign, to preserve her pension rights, as opposed to being terminated. Per Craig, if plaintiff provided anything exculpatory as to what happened to the property, a statement was to be taken. Plaintiff denied taking anything, noting no one saw her take anything. At the end of the meeting, Craig offered plaintiff the opportunity to resign.

Per Mr. Colon, plaintiff asked him to take her to the warehouse as no BHA truck was available. At the warehouse, plaintiff had a piece of paper. She went to the back of the warehouse with Mr. D'Oliviera and came back with the toilet and a vanity top in boxes. The toilet was a Kohler down flush, which was in a smaller box than the back flush made by Crane. According to Colon, the toilet was taken to plaintiff's car and placed in the trunk. He contradicted plaintiff as to other dealings with BHA property by her. Most important, Colon contradicted plaintiff's claim about the meeting on September 11 at which he claimed to have been called into Mr. Craig's office to recount what he knew about the acquisition and disposition of the toilet as did Mr. Boyd. He answered questions of Ms. Johnson. Plaintiff was further contradicted by Ms. Wells/Falco who stumbled on the unfiled requisition and noted the discrepancy between the toilet obtained and the type used in Green Homes, the fact that replacement back flush toilets were kept at Green Homes storage making a requisition unnecessary, the failure to find the toilet, and the paucity of information provided by plaintiff. According to a maintenance supervisor, Mr. Mohlee, the BHA used a lock system in each project with a master key that fit only, but all, the locks in the project. A lock at plaintiff's property was a BHA lock as the master key fit and worked that lock. Further a control key used with the projects lock series also worked the lock in plaintiff's door.

Mr. Craig, Mr. Mellow, and Mr. Carrafiello all confirmed the disclosure at the September 11 meeting of the evidence of plaintiff's taking of the toilet. Per Mr. Craig, through the union, plaintiff was then offered resignation in lieu of termination if she had no proof in contradiction of the evidence of her taking BHA property. In that way, plaintiff could preserve her benefits after the length of her service. The meeting was to continue two days later to give her an opportunity to provide evidence, as she offered none initially except her denial.

Mr. D'Oliviera testified that plaintiff supplied the description of a floor flush toilet as the type she wanted, and confirmed that he supplied and filled in the stock number on Ex. 51. The box containing the toilet pictured it as a floor flush.

At the meeting on September 13, plaintiff was provided with an opportunity to provide any evidence she wished, but none was provided. Per Mr. Papa, he was instructed to conduct the September 13 meeting to give plaintiff the opportunity to provide evidence, absent which she was afforded the opportunity to resign or be terminated. He asked plaintiff if she had any evidence to offer. None was provided.

As she refused to resign, she was terminated.

The September 26 meeting was in response to plaintiff's post-termination grievance and to afford her the opportunity to resign to preserve her benefits. Mr. Carrafiello and Ms. Johnson recommended that she resign based on their review of the evidence provided by the BHA. Plaintiff was told that the union would nonetheless represent her if she chose to pursue the grievance. The union representatives told her she was ill-advised to do so in the face of the evidence possessed by the BHA and she should resign to preserve her benefits. On the union's request for leniency, the grievance was withdrawn, the September 13th termination was vacated, and plaintiff was allowed to resign, thereby ending her employment. Plaintiff decided not to pursue the grievance but to resign. She signed the resignation on September 26. In so doing, plaintiff waived her right to the hearing on her grievance on September 26, to which she was entitled per the union contract.

After plaintiff resigned, she collected unemployment compensation until February 1997, when she undertook full time employment. Since resigning, plaintiff has collected a pension of $290 per month. She has earned income since February 1997 from her regular employment and, in addition, earned from $2,000 to $5,000 from an outside job, the precise amount of which could not be corroborated as she failed to declare it in her income tax returns. As plaintiff's claim is for due process, her claim for compensatory damages was limited.

DISCUSSION:

█ Plaintiff has steadfastly alleged that she was not informed of the conduct with which she was charged nor of the evidence in support of the charge, nor was she afforded an opportunity to offer evidence in response. Based on the union contract, she had a property interest in the job and was thus entitled to due process before a termination. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). That said, the question becomes "what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Due process requires notice of the charges and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Deprivation of property requires "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The opportunity must precede deprivation of a significant property interest. *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Due process requires balancing an individual's interest in her property right and the governmental interest in expeditious removal of unsatisfactory employees, avoidance of administrative burdens, and risk of an erroneous termination. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Pre-termination process need not be elaborate and need not be a full evidentiary hearing, particularly when, as here, there is a post termination hearing. *Mathews*, 424 U.S. at 343, 96 S.Ct. 893. It need not definitely determine the propriety of a termination but is sufficient if it demonstrates reasonable grounds to believe that the charges being considered are true and supportive of termination. The entitlement is to notice of the charges, an explanation of the evidence supportive of the charges, and an opportunity for the employee to present her side of the story. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

 Crediting plaintiff's evidence and giving her the benefit of reasonable inferences favorable to her case, it is without question that plaintiff received due process. In so holding, it does not escape the notice of the court that it is not entitled to displace the jury nor to deprive a party of her entitlement to a jury trial and the benefit of a verdict in her favor. Nonetheless, a jury is not entitled to untrammeled decision-making authority. If the evidence, viewed most favorably to the plaintiff, including drawing all inferences reasonably flowing therefrom, precludes a finding that a jury could reasonably have returned a verdict in her favor, the court must reverse the verdict. A verdict can be allowed to stand only if it is reasonably based on the evidence in the record. *Michelman v. Clark–Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1042 (2d Cir.), *cert. denied* 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976). "When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding ... by judgment notwithstanding the verdict." *Brady v. Southern Railway Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 88 L.Ed. 239 (1943). Reversal of a verdict is not favored but is required, and permitted, "only when, viewing the matter in the light most favorable to the party for whom the jury found, the evidence permits only one reasonable conclusion." *ARP Films, Inc. v. Marvel Entertainment Group, Inc.*, 952 F.2d 643, 651 (2d Cir.1991). "[W]hen there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" the verdict may be set aside. *Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir.2000) (quoting *Muller v. Costello*, 187 F.3d 298, 312 (2d Cir.1999)) (citations and internal quotation marks omitted). Granting a Rule 50(a) motion is proper when the "movant's evidence is so overwhelming that a reasonable jury could only have reached the opposite result," *Baskin v. Hawley*, 807 F.2d 1120, 1129 (2d Cir.1986) or " 'such a complete absence of evidence support[s] the verdict that the jury's findings could only have been the result of sheer surmise and conjecture.' " *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688 (2d Cir.1983); *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 132 (2d Cir. 1986). What is clear from all of these cases is that, while an absolute lack of evidence of one or more essential elements of a cause of action precludes the plaintiff from prevailing, the presence of only de minimus evidence of such an element in a record likewise may preclude a plaintiff from prevailing. *Newmont Mines*, 784 F.2d at 132. Judgment as a matter of law should be granted only when "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Mallis*, 717 F.2d at 688–89 (citation and internal quotation marks omitted). A level of evidence that does not surmount the above-described threshold warrants judgment as a matter of law because a verdict based on such evidence, so minimal as to be overwhelmed by evidence to the contrary, would constitute surmise and conjecture or would be clearly outside the range of reason. Such evidence would permit only one conclusion, contrary to the verdict, and would warrant, if not require, judgment as a matter of law.

 To prevail on a motion for a new trial, the jury must have reached " 'a seriously erroneous result' or the verdict is a

'miscarriage of justice.'" *Newmont Mines,* 784 F.2d at 132 (citation omitted). Since the heavier burden pertains to the motion for judgment as a matter of law, it will be considered first.

## MOTION FOR JUDGMENT AS A MATTER OF LAW

■ Plaintiff's claim requires proof that she was not provided with notice of the charge being considered against her, some semblance of the evidence against her, and an opportunity to respond to the charge. The motion does not afford the court the option of deciding the case contrary to the decision of the jury. Rather, it requires a search of the record for evidence supportive of the verdict in the face of defendants' claim that plaintiff's own evidence demonstrates the lack of any evidential foundation for the jury's verdict. On direct examination, plaintiff restated her claim in the complaint that she was not so notified, that she was not informed of the evidence, and that she had no opportunity to respond. The court may not disregard plaintiff's evidence on the basis of her credibility even when there is an ample basis for doing so. Thus, the question presented must be decided on the evidence, including that from plaintiff, which defendants cite as proof she was afforded full compliance with her right of due process. Simply put, when proof of the claim is based on the plaintiff's having said "no," is a jury question presented when she has also said "yes," particularly when the only evidence supportive of her claim is her testimony? May the court decide the question based on the fact that all the evidence, other than plaintiff's testimony, contradicts her "no" and supports her "yes"?

In her Claims of Fact, in her TPO compliance dated October 19, 2000, filed October 23, 2000, p. 4, ¶ 5, plaintiff states:

On September 11, 1996, at approximately 4 PM the plaintiff was called into the office of Clarence Craig, the Executive Director of the Housing Authority and Mr. Craig informed the Plaintiff "that he had substantial evidence that the Plaintiff stole a toilet seat, toilet tank, toilet bowl and bathroom vanity from the Housing Authority. The Plaintiff was told that she had until 10:00 AM on Friday, September 13 to either resign or she would be fired."

Plaintiff testified that Craig informed her at the September 11 meeting that there was substantial evidence that she had misappropriated BHA property for her personal use. Transcript, December 13, 2000, p. 195. The testimony of others at the meeting, i.e., Craig, Mellow, Carrafiello, was that plaintiff was informed of the evidence that she had misappropriated a toilet.

Plaintiff testified that after the September 11 meeting she sought to talk to Messrs. Boyd, who told her he knew nothing about a toilet, and Colon, and, with Ms. Wells/Falco, plaintiff searched for the toilet. She also searched for the requisition and the work order. Thus, from her own testimony, in confirmation of her admission in the TPO compliance, plaintiff knew that she was charged with misappropriation of a toilet and knew the source of the evidence against her, i.e., Messrs. Colon, Boyd and Ms. Wells/Falco, and that the requisition and work order were significant in relation to the charge of misappropriating the toilet. In confirmation of the testimony of Boyd, Colon, Craig, Mellow, and Carrafiello that Boyd and Colon reiterated their statements in plaintiff's presence at the September 11 meeting, and in contradiction of plaintiff's testimony that she was provided with no information as to the evidence against her, plaintiff testified that Boyd and Colon were called to Craig's

office on September 11. Carrafiello testified that he had seen the evidence gathered by Mellow and discussed it with plaintiff. Her claim was that the meeting lasted for about 30 minutes "and consisted of Craig's announcement that he had substantial evidence of her taking BHA property and that she had until September 13 to resign or be fired. Plaintiff offered no explanation for what occurred in the meeting beyond the time it took for Craig to make that announcement.

With respect to her claim that she was afforded no opportunity to respond, plaintiff conceded that she was given from September 11 to September 13 to respond, and that she was not explicitly refused the opportunity to respond. She testified about her efforts between the first two meetings to obtain evidence with which to defend herself. The nature of her inquiry/search suggests a full awareness of the evidence against her as she knew what to look for in response and what she went looking for would have been responsive to the evidence on which the BHA was relying. Plaintiff had to know what was said against her and who said it to make the inquiry she testified she made. In her deposition, which she conceded at trial, plaintiff stated that she had an opportunity to explain the matter and was asked by Craig to bring him proof to support her denial of the charges. Though at first plaintiff claimed she was merely given an ultimatum on September 11, and two days to resign, she eventually testified that she was told that she had two days in which to present evidence to refute the charges. Craig "said that I had till Friday to resign or be terminated, unless I could prove different." Testimony of plaintiff, transcript of December 13, 2000, p. 87, lines 24–25, p. 198–99, 204–05; Transcript, December 14, 2000, p. 23. Craig, Mellow, and Carrafiello testified that plaintiff was told on September 11 that she could present

any evidence she had to refute the charges and would have until September 13 to do so. *Id.*, p. 24–25. Plaintiff makes no claim that she asked for more time to respond. On September 13, contrary to her claim of not being heard, plaintiff reiterated her denial of responsibility for a missing toilet. *Id.* ¶ 7. She offered no evidence at any of the three meetings. Mr. Papa, who presided over the September 13 meeting, testified that, with her union representatives present, plaintiff was asked if she had any evidence to offer. When she responded in the negative, plaintiff was asked if she wished to resign. Upon rejection of that offer, she was terminated.

On September 26, plaintiff consulted with the union representatives. They advised her to accept the offer to resign as she could then retain her benefits including her pension. Further, plaintiff would leave the BHA's employ with a clean record and would be eligible for unemployment compensation benefits, which she did receive. Plaintiff knew she could pursue the pending grievance and would be represented and supported by the union. On the recommendation of Ms. Johnson, she agreed to resign as a compromise. Plaintiff signed the resignation, Ex. U. Per Mr. Carrafiello, after reviewing the report of Mr. Mellow and the statements he had taken, all of which were reviewed with plaintiff, he advised her that she was ill-advised not to resign and advised that it was in her best interest to do so to retain the benefits. He told her it was her decision but, as it was obliged to do, the union would support her if she chose to pursue the grievance.

■ If the foregoing were insufficient to demonstrate, by the overwhelming weight of the evidence, that plaintiff was not denied due process, but rather was fully accorded her right to notice of the

charge, the evidence relied on and an opportunity to be heard in response, then the motion would nonetheless be granted on the basis that the adverse employment decision of which she complains, and on which her claim of a due process violation is based, was vitiated. She was not terminated by BHA. In compliance with its agreement, the BHA vacated its September 13 termination of her employment and allowed her to resign. By resigning, plaintiff terminated her employment. Due process accrues before deprivation of a property right occurs. Plaintiff chose to terminate her employment by resigning. If the BHA undertook to deprive plaintiff of her right to continued employment and in due course did so, due process was required. *Cleveland Bd. of Educ.*, 470 U.S. at 538, 105 S.Ct. 1487. Defendants could not deprive plaintiff of her property right without due process. As BHA rescinded its termination of her employment, plaintiff was not deprived of her right to continued employment by the BHA. By her resignation, she forsook that right. She has no claim of denial of a right to due process when the termination of her employment was not the result of a deprivation by BHA but of her choice. "Only if a State deprives any person ... can [the protection of the Fourteenth Amendment through the Due Process Clause] be invoked." *Rice v. Sioux City Cemetery*, 349 U.S. 70, 72, 75 S.Ct. 614, 99 L.Ed. 897 (1955).

CONCLUSION:

Accordingly, defendant's Motion for Judgment as a Matter of Law (doc. # 137) is granted. It is unnecessary to decide the Motion for Modification or a New Trial (doc. # 136), which is therefor denied without prejudice. Nor is it necessary to consider the motions on the basis that the verdict is excessive and unsubstantiated, in amount, by the evidence.

In view of the forgoing decision, plaintiff's Motions for Front Pay and Prejudgment Interest (doc. # 142) and for Attorney Fees and Cost (doc. # 138) are denied.

SO ORDERED.