**UNITED STATES of America, Appellee,**

v.

**John Alonso RAMIREZ, and Zeir Marulanda, Defendants–Appellants.**

**Nos. 298, 313, Dockets 89–1110, 89–1127.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1989.

Decided Jan. 24, 1990.

Dennis C. Murphy, Norwalk, Conn. (Mary Beattie Schairer, Norwalk, Conn., of counsel), for defendant-appellant, John Alonso Ramirez.

James M. Kearns, Bridgeport, Conn., for defendant-appellant, Zeir Marulanda.

James I. Glasser, Asst. U.S. Atty., Bridgeport, Conn. (Stanley A. Twardy, Jr., U.S. Atty. for Conn., Holly B. Fitzsimmons, Asst. U.S. Atty., Bridgeport, Conn., of counsel), for appellee.

Before OAKES, Chief Judge, and KEARSE and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendants John Alonso Ramirez and Zeir Marulanda appeal from judgments of the United States District Court for the District of Connecticut (T.F. Gilroy Daly, Judge) convicting them after a jury trial of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. On this appeal, Ramirez argues that his conviction should be reversed on the ground that the district court improperly admitted subsequent similar act evidence. Marulanda, Ramirez's co-defendant, asserts that the similar act evidence, admitted against Ramirez only, unduly prejudiced him, and therefore denied him a fair trial. In addition, Marulanda contends that the district court committed reversible error both when it held certain evidence to be inadmissible hearsay, and when it instructed the jury concerning flight as possible evidence of his guilt. For the reasons stated below, we affirm the judgments of conviction against both defendants.

## BACKGROUND

On November 19, 1987, a United States Customs inspector at the Bridgeport, Connecticut, Post Office on a routine inspection discovered a package sent from Venezuela

in which approximately six pounds of cocaine were secreted in a Spanish language encyclopedia. The package was addressed to Jose Manuel Grisales at 300 Lyons Terrace, Bridgeport, Connecticut. In preparation for a controlled delivery, federal agents equipped the package with a court-authorized electronic monitoring device. Following a successful delivery and a twenty-four hour surveillance period of the premises, the agents decided to obtain a search warrant. The ensuing search of 300 Lyons Terrace disclosed neither any trace of Jose Manuel Grisales, nor evidence of drug trafficking; the unopened package was recovered from under a basement staircase. Subsequent investigation revealed that Baltazar and Carmen Hernandez resided with their two children at 300 Lyons Terrace. Mrs. Hernandez explained that a woman who lived in Philadelphia with her husband's half-brother, Gennaro Figueroa (a/k/a "Lachuga"), had asked them to hold the package.

Approximately two weeks after the search, the Bridgeport Post Office received a change of address form in the name of Jose Manuel Grisales that redirected mail from 300 Lyons Terrace to 147 Grove Street, Bridgeport. Federal agents sent a postal notice to inform Grisales at the Grove Street address that a package addressed to him could be procured at the post office. On December 22, 1987, the defendants John Ramirez and Zeir Marulanda claimed the package. Ramirez presented a social security card in the name of Jose Manuel Grisales to a federal agent posing as a postal clerk, and signed that name to a receipt.

After accepting the package, the defendants departed in Marulanda's car. Federal and local police officers followed in unmarked cars as the defendants proceeded in a seemingly aimless and surveillance conscious manner. Anticipating a sudden acceleration in speed, Bridgeport Detective Rafael Villegas and his partner forced the defendants to the side of the road. The defendants were found to be in possession of the package and taken into custody.

At the joint trial of the defendants, Ramirez testified on his own behalf, and denied any involvement in the sale or purchase of cocaine. Ramirez further testified that he had no knowledge of the contents of the package. He claimed to be simply picking-up the package for his friend, Grisales. In addition, Ramirez stated that he and Grisales had entered the country illegally, and that shortly before claiming the package, he and Marulanda had visited Grisales in Philadelphia where they were introduced to Lachuga.

Prior to trial, the government filed notice of its intention to introduce evidence that Ramirez participated in an attempted sale of cocaine subsequent to his December 1987 arrest. The district court, after inquiring into the nature of the evidence, reserved its decision. In response to Ramirez's disavowal of any involvement in the cocaine trade, the government in its rebuttal case sought to introduce the similar act evidence under Federal Rule of Evidence 404(b) for the purpose of proving knowledge. Defense counsel objected to the admission of the evidence on the ground, *inter alia*, that it was unfairly prejudicial. After hearing the defense position, the district court ruled in favor of the government. Consequently, the jury heard testimony from Bridgeport Detective William Perez that in September 1988 Ramirez and associates met in a Bridgeport pizza parlor to negotiate the price and delivery of one and one-half pounds of cocaine. Both at the time of this testimony and later in the jury charge, the district court cautioned the jury that the evidence was introduced for a limited purpose only as it pertained to Ramirez, and not to Marulanda.

Although Marulanda did not testify at trial, the theory of his defense was that he was set up by Grisales and Lachuga who left him unapprised of the package's contents in order to protect themselves and Lachuga's half-brother, Baltazar Hernandez. In corroboration of the theory, Marulanda sought to admit into evidence two affidavits of Special Agent Kevin McGettrick of the United States Customs Service. McGettrick's affidavits were prepared in support of a request to the court to place

the electronic monitoring device in the package shortly before the controlled delivery, and a request for the search warrant for the Hernandez residence. Both affidavits were based on information supplied to McGettrick by other police officers. The district court refused them as inadmissible hearsay.

As an element of its direct case against Marulanda, the government introduced evidence of an admission made while he was incarcerated at the Bridgeport Correctional Center prior to trial. Another inmate in custody at the jail on drug related charges, Pedro Avila, testified that Marulanda revealed to him his participation in the cocaine trade, his knowledge of the contents of the package, as well as his awareness that the package was sent in a different name in order to avoid a problem should its contents be discovered.

Finally, defense counsel for Marulanda objected to a proposed jury charge on the issue of flight, claiming that the testimony of Detective Villegas was insufficient to support such a charge. The district court charged the jury as follows:

> The intentional flight or attempt to avoid detection by a person immediately after the commission of a crime is not, of course, sufficient in itself to establish a Defendant's guilt but it is a fact, which if proved to your satisfaction, may be considered by you in light of all other evidence in the case in determining guilt or innocence. Whether or not there's evidence of flight or evidence of an attempt to avoid detection in this case is a matter for you the jury to decide. However, in reviewing such evidence, if you understand that such exists, you should consider, if you understand flight, whether there may be reasons for this which are fully consistent with innocence of the offenses charged in the indictment. Similarly, there may be perfectly innocent reasons for any attempt to avoid detection if you understand such an attempt was made.

Trial Transcript, January 10, 1989, at 51–52. Marulanda's attorney again objected to the charge at the time it was given.

The jury returned its verdict finding both defendants guilty on counts one and two of the indictment. On March 7, 1989, the district court imposed terms of imprisonment on both defendants; they are presently incarcerated.

## DISCUSSION

### A. The Similar Act Evidence.

■ The sole issue raised by Ramirez on this appeal is whether the district court erred when it allowed the government to introduce similar act evidence. Specifically, Ramirez argues that the district court's admission of Detective William Perez's testimony was inconsistent with the Supreme Court's analysis of Federal Rule of Evidence 404(b) in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). We disagree.

In *Huddleston*, 108 S.Ct. at 1502, the Court framed a four part test by which to determine if the admission of evidence under Rule 404(b) might be unfairly prejudicial. Pursuant to this analysis, the district court must insure that the evidence is: advanced for a proper purpose; relevant to the crime for which the defendant is on trial; more probative than prejudicial; and, if requested, admitted with limiting instruction to the jury. *Id.; United States v. Colon*, 880 F.2d 650, 656 (2d Cir.1989); *United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989).

First, the evidence in question must be proffered for a "proper purpose." *Huddleston*, 108 S.Ct. at 1502. Rule 404(b) expressly provides that similar act evidence may be admitted for the purpose of proving knowledge. When the defendant disavows awareness that a crime was being perpetrated, and the government bears the burden of proving the defendant's knowing possession as an element of the crime, knowledge is properly put in issue. *See United States v. Arango-Correa*, 851 F.2d 54, 60 (2d Cir.1988); 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[13], at 404–98 to 404–102 (1989). On notice of the government's intention to offer the similar

act evidence, Ramirez during direct examination denied any knowledge about the contraband concealed within the package. Ramirez's disclaimer, counterposed against the government's burden, put knowledge in issue; consequently, the district court allowed the evidence of his involvement in an attempted cocaine transaction for a proper purpose.

Second, the evidence must fulfill "the relevancy requirement of Rule 402—as enforced through Rule 104(b)." *Huddleston*, 108 S.Ct. at 1502. Under Rule 402, all evidence that is relevant—that is logically probative—is admissible. *See* 1 Weinstein's Evidence ¶ 402[01], at 402-4. As the Supreme Court noted: " '[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.' " *Huddleston*, 108 S.Ct. at 1501 (quoting Advisory Committee's Notes on Fed.Rule Evid. 401, 28 U.S.C.App., p. 688). The relevancy of similar act evidence is insured by the requirements of Rule 104(b); and accordingly, similar act evidence is relevant if the jury could reasonably find by a preponderance of the evidence that the act occurred and that the defendant committed the act. *Id.* The district court must determine whether the jury could reasonably reach such findings based on all the evidence presented to the jury. *Id.* Upon appellate review, it is well settled that the district court is afforded wide latitude, and its determinations of relevancy will not be reversed absent an abuse of discretion. *See id. See also United States v. Diaz*, 878 F.2d 608, 614 (2d Cir.), *cert. denied,* ___ U.S. ___, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989).

The district court allowed the similar act evidence against Ramirez during the government's rebuttal and after Ramirez put knowledge in issue by his testimony. At that point in the trial, the jury had already heard about Ramirez's use of a false name and another person's social security card, as well as alleged flight and the other evidence in the government's direct case. The testimony of Detective Perez was unequivocal that Ramirez participated in a transaction to sell one and one-half pounds of cocaine in September 1988. There can be no question that a jury could reasonably find that the act occurred and that Ramirez was the actor. Here, in connection with the totality of the evidence, the subsequent similar act was significant in establishing Ramirez's state of mind at the time of his arrest in December 1987 as a "means of ascertaining that mental state ... by drawing inferences from conduct." *Huddleston*, 108 S.Ct. at 1499. Consistent with the *Huddleston* analysis, we do not think that the district court abused its discretion in determining that the similar act evidence was relevant as probative of the defendant's knowledge.

■ In addition, we decline Ramirez's invitation to adopt a *per se* rule that subsequent similar act evidence inherently lacks relevancy. Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility. *United States v. Hurley*, 755 F.2d 788, 790 (11th Cir.1985) ("A subsequent act, as well as a prior act, can be used to show intent under Rule 404(b)."). Rather than adopt a rigid approach, we leave it to the district court to exercise its discretion in reaching determinations about relevancy based upon the *Huddleston* analysis.

Third, the probative value of the similar act evidence must substantially outweigh its potential for unfair prejudice under Rule 403. *Id.* at 1502. On appellate review, a district court's "conscientious assessment" of the Rule 403 factors will not be reversed unless there is a "clear showing of abuse of discretion." *United States v. Martino*, 759 F.2d 998, 1005 (2d Cir. 1985). Moreover, after being presented with the possible prejudicial effect of similar act evidence, a district court need not mechanically recite the Rule 403 formula as a prerequisite to admission. *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985).

Although it facilitates appellate review when the district court expressly mentions

the Rule 403 factors, the district court's omission of a talismanic recitation does not imply that it was unaware of or failed to conduct the necessary balancing. The record in this case reveals that the district court heard defense counsel's objection to the evidence as unduly prejudicial, and then recessed the proceedings before rendering its final decision on the matter. The district court's attentiveness to the Rule 403 balancing is further attested to by its lengthy inquiry into the nature of the similar act evidence when the government first expressed its intention to offer it as proof. Only after the defendant raised the issue of knowledge did the district court determine the evidence admissible. Thus, the district court did not abuse its discretion in determining that the possible prejudicial effect of the evidence was outweighed by its plain probative value.

Fourth, when requested, the district court must give a limiting instruction to the jury, pursuant to Rule 105, to the effect that "the similar acts evidence is to be considered only for the proper purpose for which it was admitted." *Huddleston*, 108 S.Ct. at 1502. Both upon receiving the similar act evidence and later during the jury charge, the district court clearly instructed the jury that the evidence was limited to the issue of Ramirez's knowledge concerning the contents of the package. The record reveals that the district court was equally clear in cautioning the jury that the evidence was allowed against Ramirez only.

■ Despite the clarity of the court's charge, Marulanda asserts that simply because he was tried as a co-defendant, he was unduly prejudiced by the admission of the evidence. While the evidence against Ramirez may conceivably have had some spillover effect on Marulanda, such a possibility is too speculative upon which to conclude that the similar act evidence should not have been admitted at the joint trial. *See United States v. Figueroa*, 618 F.2d 934, 946 (2d Cir.1980). In the absence of a more specific delineation, we conclude that the limiting instruction as given by the district court safeguarded against undue prejudice. *See id.*

B. *The Hearsay Evidence.*

■ On this appeal, Marulanda raises an additional issue that the district court improperly refused to admit into evidence the two affidavits of Agent McGettrick. The affidavits were filed in furtherance of the application for the installation of the electronic monitor and the subsequent search of the Hernandez residence. Marulanda now argues that the district court erred in characterizing the affidavits as unreliable and inadmissible hearsay. He sought their admission in order to corroborate his theory of the case that he was an innocent victim. We are not persuaded that Marulanda's conviction must be reversed on the basis of this issue.

According to Marulanda, the information in the affidavits would lend support to his defense that he was framed. Although the affidavits are out-of-court statements, Marulanda contends they constitute admissions of a party-opponent—*i.e.*, the government—and thus are not hearsay and are admissible under Fed.R.Evid. 801(d)(2). Alternately, Marulanda argues the affidavits are admissible under Fed.R.Evid. 803(8)(C), the public records exception to the hearsay rule which allows a criminal defendant to introduce "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." An argument can be made that when the government advances a statement of its agent in a judicial proceeding to obtain a search warrant, the government has adopted the content of the statement, and a criminal defendant may introduce the statement as a party admission under Fed.R.Evid. 801(d)(2)(B). *See United States v. Morgan*, 581 F.2d 933, 937–38 (D.C.Cir.1978); *but see United States v. Santos*, 372 F.2d 177, 180–81 (2d Cir.1967) (pre-Federal Rules of Evidence case). However, we need not decide this question, because we believe the district court's refusal to admit the affidavits did not substantially prejudice Maru-

landa and thus does not provide grounds for reversal.

The information contained in the affidavits was gathered at a preliminary stage in the investigation, and hence subject to change as the investigation progressed. Moreover, since the affidavits consisted of McGettrick's compilations of observations made by other officers, the affidavits consisted of his out-of-court statements regarding events he did not witness. As such, the affidavits could not be thought of as overwhelmingly powerful evidence.

Marulanda opted not to call McGettrick, and thereby put into issue the events memorialized in the affidavits. The district court exercised its broad discretion in determining that the affidavits constituted untrustworthy and unreliable hearsay. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 448–49, 102 L.Ed.2d 445 (1988); *United States v. Durrani*, 835 F.2d 410, 425 (2d Cir.1987); *City of New York v. Pullman Inc.*, 662 F.2d 910, 914 (2d Cir.1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). If Marulanda had adopted a different strategy at trial and confronted McGettrick with the statements, the affidavits may well have been admissible. *See Santos*, 372 F.2d at 180.

In any event, Marulanda had ample opportunity, apart from the McGettrick affidavits, to prove his assertion that he was set-up. The district court allowed defense counsel the opportunity to cross-examine witnesses using the affidavits as factual predicates. Indeed, defense counsel utilized this opportunity in the cross-examination of government witnesses Special Agent Peter Harrington and Baltazar Hernandez. Thus, even if the district court's exclusion of the two affidavits had been in error, it would have been harmless error. *See Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *Durrani*, 835 F.2d at 426; *see also* Fed.R. Evid. 103(a).

C. *The Jury Instruction on the Issue of Flight.*

On this appeal, Marulanda reasserts his objection to the district court's jury charge concerning flight. The charge cautioned the jury that flight in and of itself is insufficient to establish guilt, that flight may have explanations other than a consciousness of guilt, and that flight should not be presumed to have occurred since that is a determination of fact left to the jury. Thus, we think the charge was "sufficiently balanced ... to enable the jury to consider the issue fairly." *United States v. Castro*, 813 F.2d 571, 578 (2d Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). Further, the testimony of Detective Villegas that he was following the defendants who had to be forced to the side of the road constituted a proper factual predicate, based on which the jury could reasonably find that the defendants intended to flee. *See United States v. Sanchez*, 790 F.2d 245, 252 (2d Cir.), *cert. denied*, 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986). Accordingly, we conclude that the charge as given was adequate.

## CONCLUSION

For all the reasons stated above, the judgments of conviction entered in the district court against both defendants are affirmed.