Jonathan **CAROFINO** & George
T. Carofino, Plaintiffs,

v.

Bruce M. **FORESTER**,
M.D., Defendant.

**No. 03 Civ. 6258(PKL).**

United States District Court,
S.D. New York.

Aug. 31, 2006.

260

Law Office of Carmen S. Giordano, New York City, Carmen S. Giordano, for Plaintiffs.

Meiselman, Denlea, Packman, Carton & Eberz P.C., White Plains, NY, David S. Douglas, for Defendant.

## OPINION AND ORDER

LEISURE, District Judge.

This is a diversity action for medical malpractice, fraud, and unjust enrichment. Plaintiffs Jonathan Carofino ("Jonathan") and his father George T. Carofino ("George"), both residents of Connecticut, allege that Jonathan's psychiatrist, defendant Bruce M. Forester, M.D., a resident of New York, failed to (1) properly diagnose, and in fact misdiagnosed, Jonathan's condition; (2) provide proper, and in fact provided improper, psychiatric treatment; and (3) prescribe proper, and in fact prescribed improper, medication. They further allege that defendant fraudulently billed plaintiffs for psychiatric treatment that was never rendered and, as such, defendant was unjustly enriched by plaintiffs' payments for such fictitious treatment. Defendant now moves for summary judgment, seeking a finding of non-liability on plaintiffs' fraud and unjust enrichment counts. Defendant further moves, *in limine,* for a finding that his prior conviction for health care fraud is inadmissible at trial pursuant to Federal Rule of Evidence 404(b). Plaintiffs cross-move for the imposition of sanctions pursuant to Federal Rule of Civil Procedure 11 on the ground that defendant's summary judgment motion as to plaintiffs' fraud claim is completely baseless. Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART, defendant's motion for the exclusion of certain evidence pursuant to Rule 404(b) is DENIED, and plaintiffs' cross-motion for Rule 11 sanctions is DENIED.

## BACKGROUND [1]

### I. *Defendant's Allegations of Undisputed Material Issues of Fact*

Defendant alleges that the Carofinos sought his services in late 1999. Jonathan, who was in his late twenties at the time, had been experiencing panic attacks. (Def.'s 56.1 ¶ 1.) Defendant claims that the parties agreed that George would pay defendant $600 per week for his services, and defendant would seek any additional payment directly from those insurance companies that George identified as Jonathan's carriers. (Def.'s 56.1 ¶ 2.) The suggestion to bill Jonathan's carrier was made by George. (Def.'s 56.1 ¶ 10.) Between 2000 and part of 2001, defendant treated Jonathan, diagnosing him with "panic disorder." Jonathan failed to attend a number of his scheduled appointments. (Def.'s 56.1 ¶ 3.)

Jonathan ceased his treatment with defendant after moving from New York City back to his parents' home in Connecticut in the spring of 2001. (Def.'s 56.1 ¶ 4.) In March 2003, defendant pled guilty to an indictment brought in this district for health care fraud and false statements made in connection therewith. The indictment related to certain charges made by defendant to Fortis Insurance Co. ("Fortis") for psychiatric counseling sessions that Jonathan did not attend between October 2000 and the summer of 2001. (Def.'s 56.1 ¶ 5.) Defendant did not charge George for any of these appointments and, accordingly, George did not pay for any of these appointments. (Def.'s 56.1 ¶ 6.) In fact, George did not make any payments to defendant after October 2001. (Def.'s 56.1 ¶ 7.)

Defendant claims that all of the payments for Jonathan's treatment were made by George Carofino, D.D.S., P.C. ("Carofino P.C."), the professional corporation created by George to serve as his dental practice. (Def.'s 56.1 ¶ 8.) According to defendant, George never reimbursed this entity for its payments to defendant. (Def.'s 56.1 ¶ 8.) When questioned by defendant about why this entity, rather than George, in a personal capacity, made payments to defendant, George refused to answer, invoking his Fifth Amendment privilege against self-incrimination. (Def.'s 56.1 ¶ 9.)

Defendant further contends that, with respect to insurance billing, George had admitted that billing for a missed appointment is "not only not 'fraudulent,' but an accepted practice that George himself used as a regular part of his own dental practice." (Def.'s 56.1 ¶ 11.) According to defendant, George in fact suggested to defendant that he "modify his bills so that George . . . could attempt to deceive one of his insurers into thinking that [defendant] was providing 'family therapy,' and not just treatment of Jonathan." (Def.'s 56.1 ¶ 12.) Finally, defendant alleges that George falsely represented that Jonathan was an employee of George's dental practice so that insurance benefits might be available to Jonathan. (Def.'s 56.1 ¶ 13.)

### II. *Plaintiffs' Responses and Allegations of Additional Material Facts to Which They Contend Genuine Issues Exist*

Plaintiffs claim that Jonathan began seeing defendant after "experienc[ing] episodes of mental illness, manifesting initially as perceived anxiety and panic." (Pl.'s 56.1 ¶ 16.) In one episode in July 1999,

---

1. The Court includes in this section those alleged facts material to this motion that the parties have properly offered in accordance with Rule 56.1 of the Local Rules for the Southern and Eastern Districts of New York. *See* S.D. & E.D. N.Y. R. 56.1(a).

he visited New York Presbyterian Hospital's emergency room, where he reported physical sequelae stemming from panic or disguised mania. (Pl.'s 56.1 ¶ 16.) In November 1999, Jonathan turned to his parents for help. In response, George was referred to defendant by a friend. (Pl.'s 56.1 ¶ 18.)

Plaintiffs claim that defendant told George and his wife, Dianne Carofino ("Dianne") that he wanted to see Jonathan three times per week. In reality, he surreptitiously told Jonathan that he wanted to see him only twice a week. (Pl.'s 56.1 ¶ 2.) They claim that defendant agreed to bill Fortis directly for Jonathan's treatment, and that "[i]t was understood" that George would pay those costs that Fortis would not cover above and beyond the $900 weekly fee. (Pl.'s 56.1 ¶¶ 2, 10.) After meeting with defendant, defendant told George and Dianne that he would "constantly keep them apprized of Jonathan C's treatment and progress during the course of treatment." (Pl.'s 56.1 ¶ 21.)

According to plaintiffs' allegations, defendant in reality only saw Jonathan, "at most," once per week, while at the same time representing to George and Dianne that he was seeing Jonathan three times per week and billing them (and Fortis) accordingly. Defendant often would double-bill plaintiffs. (Pl.'s 56.1 ¶ 3.) Plaintiffs agree that Jonathan moved back to Connecticut in early 2001. They assert, however, that prior to his move Jonathan's mental health had declined significantly. Defendant continued to bill the Carofinos, and the Carofinos paid such bills, after October 2000 and continuing through the period after defendant ceased seeing Jonathan. (Pl.'s 56.1 ¶¶ 4, 7.) Defendant was prosecuted for billing for this fictitious treatment. (Pl.'s 56.1 ¶ 5.)

At some point after his therapy had begun, Dianne confronted defendant about the discrepancies in defendant's scheduling and billing, and defendant lied about having held regular double sessions with Jonathan (Pl.'s 56.1 ¶ 24) and dismissed the Carofinos' concerns about Jonathan's care (Pl.'s 56.1 ¶ 28). Defendant continued to lie to George and Dianne about Jonathan attending three weekly appointments and taking his prescribed medication. (Pl.'s 56.1 ¶ 29.)

Plaintiffs allege generally that Jonathan's condition worsened "to the point where he became completely decompensated and potentially suicidal." (Pl.'s 56.1 ¶ 32.) Between November 1999 and April 2001, his mental health "dramatically worsened, Jonathan C. became a shut in, [and] he remained in a hypomanic state and was caused to suffer permanent psychiatric injury." (Pl.'s 56.1 ¶ 36.) During his treatment, George and Dianne (1) repeated their concerns to defendant about Jonathan's worsening condition (Pl.'s 56.1 ¶ 33); (2) sought, but were denied, group sessions with Jonathan (Pl.'s 56.1 ¶ 34); and (3) asked defendant to see Jonathan less than three times per week, but he declined (Pl.'s 56.1 ¶ 35).

Plaintiffs contend that George dissolved his dental practice in October 2001, at which time he reimbursed his practice for any payments it had previously made to defendant. Additionally, George made at least two personal payments to defendant. (G. Carofino Decl. ¶¶ 17, 23.)

## DISCUSSION

### I. Summary Judgment Standards

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c); *see Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994). The question of whether a fact is material is determined by the underlying substantive law: "[T]he judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

The moving party carries the burden of demonstrating that no genuine issue of any material fact exists, *see Chambers*, 43 F.3d at 36; *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994), and, in considering whether the burden is met, a court draws all inferences, and resolves all ambiguities, in favor of the non-movant, *Chambers*, 43 F.3d at 36. Once the movant has demonstrated that there is no genuine issue as to any material fact, the non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

■ Where the non-movant bears the burden of proof at trial, summary judgment should be granted if the non-movant fails to "'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir.1996) (per curiam). The non-movant may defeat summary judgment only by producing specific facts that show there is a genuine issue of material fact for trial. The moving party may discharge its burden under Rule 56 by showing—i.e., by "pointing out"—an absence of evidence supporting the non-movant's claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Finally, in assessing the motion before it, the Court is mindful of former Chief Judge Kaufman's admonition that summary judgment "is a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (Kaufman, C.J.) (citing *Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir.1972)).

## II. Common–Law Fraud Principles

■ The general requirements of a common-law fraud claim under New York law[2] are "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir.2006);

---

**2.** The parties in their briefs assume that New York law applies to this action. Such implied consent to the application of a particular state's law validly establishes the law to be applied by this Court. *See Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir.2000) ("The parties' briefs assume that New York law controls this dispute, and such 'implied consent ... is sufficient to establish choice of law.'" (quoting *Tehran–Berkeley*

*Civil & Env. Eng'rs and Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989))); *Texaco A/S (Den.) v. Commercial Ins. Co. of Newark, N.J.*, 160 F.3d 124, 128 (2d Cir.1998) (" '[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.'" (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997))).

accord *Colavito v. N.Y. Organ Donor Network, Inc.,* 438 F.3d 214, 222 (2d Cir.2006) (same); *Cohen v. Houseconnect Realty Corp.,* 289 A.D.2d 277, 734 N.Y.S.2d 205, 206 (App.Div.2001).

A plaintiff's ability to assert a fraud claim in conjunction with a medical-malpractice claim, where the same events give rise to both causes of action, however, is limited:

> [W]ithout more, concealment by a physician or failure to disclose his own malpractice does not give rise to a cause of action in fraud or deceit separate and different from the customary malpractice action, thereby entitling the plaintiff to bring his action within the longer period limited for such claims.

*Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713, 718 (1978); accord *Gotlin v. Lederman,* 05 Civ. 1899, 2006 WL 1154817, at *8 (E.D.N.Y. April 28, 2006) ("Generally, when a claim of fraud is pleaded in combination with medical malpractice and is based upon the same events, the plaintiffs may only proceed on the malpractice claim."); *see also Rizk v. Cohen,* 73 N.Y.2d 98, 538 N.Y.S.2d 229, 535 N.E.2d 282, 286 (1989) (holding that plaintiff's claim for fraudulent concealment failed where plaintiff "relie[d] on the same act which forms the basis of his negligence claim—Dr. Cohen's alleged improper advice to plaintiff that there was nothing wrong" and, as such, "plaintiff's allegations do not establish that Dr. Cohen, acting with knowledge of *prior* malpractice, made *subsequent* misrepresentations in an attempt to conceal his earlier negligence").

A plaintiff instead must demonstrate (1) " 'knowledge on the part of the physician of the fact of his malpractice and of his patient's injury in consequence thereof' " and (2) " 'a subsequent intentional, material misrepresentation by him to his patient known by him to be false at the time it was made, and on which the patient relied to his damage.' " *Atton v. Bier,* 12 A.D.3d 240, 785 N.Y.S.2d 426, 427 (App. Div.2004) (quoting *Simcuski,* 406 N.Y.S.2d 259, 377 N.E.2d at 718). As to this latter requirement, in order to prevail a plaintiff must also demonstrate unique damages specific to the purported fraud. *See Gotlin,* 2006 WL 1154817, at *8 ("Plaintiffs must not only distinguish the elements of fraud and malpractice, they must also show unique damages in order to recover under the fraud theory."); *Luciano v. Levine,* 232 A.D.2d 378, 648 N.Y.S.2d 149, 150 (App.Div.1996) (stating plaintiff is required to " 'allege an available, effacious [sic] remedy or cure for the injuries caused by the [treatment] that he [or she] was diverted from undertaking in consequence to [the] defendants' concealment of [the] misdiagnosis' " (quoting *Harkin v. Culleton,* 156 A.D.2d 19, 554 N.Y.S.2d 478, 481 (App.Div.1990) (second through fifth alterations in original))).

### III. *Unjust Enrichment Principles*

A claim for unjust enrichment under New York law requires a showing " '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.' " *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 586 (2d Cir.2006) (quoting *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000)). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.' " *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000) (Sotomayor, J.) (quoting *City of Syracuse v. R.A.C. Holding, Inc.,* 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (App.Div.1999)). Unjust enrichment is a quasi-contract cause of action created by law " *'in the absence of any agreement.'* " *Beth Isr.,* 448 F.3d at 586 (quoting *Goldman v. Metro. Life Ins.*

Co., 5 N.Y.3d 561, 807 N.Y.S.2d 583, 841 N.E.2d 742, 746 (2005)); *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

 In addition to the restrictions on a plaintiff's ability to bring a common-law fraud claim in conjunction with a medical-malpractice claim in which the same events give rise to both actions, so too are plaintiffs restricted from pleading unjust enrichment in connection with an alleged medical malpractice. *See Gotlin v. Lederman,* 367 F.Supp.2d 349, 360 (E.D.N.Y. 2005) ("[A]s with plaintiffs' claims for fraud and negligent misrepresentation, their cause of action for unjust enrichment is encompassed by their allegations of medical malpractice."); *Karlin v. IVF Am., Inc.,* 239 A.D.2d 560, 658 N.Y.S.2d 73, 75 (App.Div.1997) (affirming the dismissal of an unjust enrichment claim where it was "merely [a] reformulation[ ] of the cause of action" to recover for medical malpractice), *modified on other grounds,* 93 N.Y.2d 282, 690 N.Y.S.2d 495, 712 N.E.2d 662 (1999).

### IV. Common–Law Fraud Principles as Applied to Defendant's Arguments

#### A. Defendant's Arguments

Defendant's first argument is that plaintiffs have failed to sustain their fraud claim as a matter of law because it is not adequately distinct from Jonathan's medical-malpractice claim under *Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978), and its progeny. (Def.'s Mem. Supp. Summ. J. 7.) This argument is conclusory in that it simply states that plaintiffs' claim that defendant

"somehow defrauded them by failing to provide continued psychiatric care that plaintiffs deemed appropriate and thus caused Jonathan Carofino injury" is insufficient as another "hook" for their medical-malpractice claim. (Def.'s Mem. Supp. Summ. J. 7.) Defendant does not point to a specific failure by plaintiffs to raise genuine issues of fact as to any of the essential elements of their fraud claim.

Defendant's second argument, however, is more firmly rooted. He argues that plaintiffs' claims must fail because George suffered no injury as a result of the alleged fraud. He argues that George himself never made any payments to defendant because all payments were made by Carofino P.C., George's personal business, and a nonparty to this action. (Def.'s Mem. Supp. Summ. J. 8.) He further argues that the evidence demonstrates that George did not pay for any missed or fictitious psychiatric sessions because defendant billed George's insurer, and not George himself. (Def.'s Mem. Supp. Summ. J. 8.) The Court turns to these arguments.

#### B. The Viability of Defendant's Arguments Under the Relevant Case Law

#### 1. The Respective Plaintiff's Causes of Action

First, as a threshold matter, the Court must address an important point that the parties largely gloss over in their papers—viz., which of the two plaintiffs, or both, asserts the respective causes of action.

The medical-malpractice claim, which is not subject to this motion, is brought solely by Jonathan for the allegedly inadequate psychiatric services rendered to him by defendant. (Compl.¶¶ 4–11.)

The allegations in the fraud count of the complaint state that defendant intentionally misrepresented to George that he was rendering psychiatric treatment to Jonathan after he had ceased seeing Jonathan; that he continued to bill George for such fictitious treatment (Compl.¶¶ 13–14); and that George's justifiable reliance on such false representations induced him to pay defendant for the fictitious treatment and forego obtaining for Jonathan other proper psychiatric treatment (Compl.¶¶ 15–16). As a result, George suffered money damages and "mental and emotional pain and anguish" (Compl.¶ 18) and Jonathan suffered, *inter alia*, "permanent psychological and personal injuries and economic hardship" (Compl.¶ 17). This count is thus brought by both plaintiffs.

The unjust enrichment claim is brought by "plaintiffs"; however, the damages pleaded are the "economic damages for money paid to defendant for medical and psychiatric treatment, care and service that was not actually rendered." (Compl.¶ 22.) Because plaintiffs do not allege that Jonathan made any payments to defendant for his care, the Court construes this allegation to be brought by George alone.

### 2. *Jonathan's Fraud Claim*

 As seen above, while Jonathan and George each plead personal damages flowing from defendant's alleged fraud, plaintiffs do not include in the complaint any allegation that, subsequent to any malpractice, defendant made an intentional, material misrepresentation to *Jonathan*

that Jonathan then relied on to his detriment. Indeed, the fraud count centers solely on the intentional misrepresentations made to George. This failure to plead an essential element of the claim, much less proffer evidence in support of it, dooms this cause of action as to Jonathan. *See Atton v. Bier,* 12 A.D.3d 240, 785 N.Y.S.2d 426, 427 (App.Div.2004) (requiring a plaintiff to plead " 'a subsequent intentional, material misrepresentation by him to his patient known by him to be false at the time it was made, and on which the patient relied to his damage' " (quoting *Simcuski,* 406 N.Y.S.2d 259, 377 N.E.2d at 718)). This claim further fails because the complaint does not allege a discreet injury flowing from the fraud that is separate and apart from any damages suffered by reason of the purported malpractice. Indeed, the only difference between the damages pleaded for Jonathan's medical-malpractice and fraud claims is that the latter includes "economic hardship."[3] An entry of summary judgment in defendant's favor is therefore proper as to Jonathan's fraud claim.

### 3. *George's Fraud Claim*

Defendant in his brief cites to the New York case law (discussed *supra* ) articulating the rule that plaintiffs bringing medical-malpractice claims are limited in their ability to concurrently bring claims for fraud. (Def.'s Mem. Supp. Summ. J. 7.) An additional fraud claim is only viable where the physician knows of the malpractice and subsequently makes an intentional misrepresentation to his patient which he

---

**3.** The seventeenth paragraph of the complaint reads as follows:

> By reason of the aforesaid, plaintiff Jonathan Carafino [sic] has sustained severe and permanent psychological and personal injuries *and economic hardship;* has suffered and will in the future suffer physical, mental and emotional pain and anguish; has

incurred and will in the future incur medical and other expenses; and plaintiff was otherwise injured.

(Compl. ¶ 17 (emphasis added).) The damages pleaded in support of his medical-malpractice claim do not include "economic hardship." (Compl.¶ 10.)

knows to be untrue, and upon which the patient relies to his or her detriment. *See Simcuski*, 406 N.Y.S.2d 259, 377 N.E.2d at 718. However, with respect to George, defendant's argument that his fraud claim must fail because it is merely a re-hashing of his medical-malpractice claim fails to recognize that this case is clearly distinguishable from *Simcuski* and its progeny in that George is the patient's father and not the patient himself. *Cf. id.* (requiring "knowledge on the part of the physician of the fact of his malpractice and of *his patient's injury* in consequence thereof, coupled with a subsequent intentional, material misrepresentation by him *to his patient* ... and on which *the patient* relied to his damage in this case") (emphasis added).

Defendant next argues that George's fraud claim fails because George suffered no injury as a result of any purported fraud.[4] The parties agree that defendant stopped seeing Jonathan in April 2001. (*See, e.g.*, Def.'s 56.1 ¶ 4; Def.'s Mem. Supp. Summ. J. 3.) Defendant claims that no genuine issues exist as to the fact that George made no payments to defendant after October 2000. (Def.'s 56.1 ¶ 7.) In the absence of any payment between October 2000 and April 2001, defendant argues, George could not have suffered any injury.[5]

■ Even if the Court were to find that no genuine issues exist as to the lack of payment by George between October 2000 and April 2001, plaintiffs' claim would not be completely dispelled because defendant incorrectly assumes that plaintiffs' claims for fraud are limited to this six-month period. In reality, plaintiffs' complaint and Rule 56.1 Counterstatement al-

lege fraudulent billing throughout the course of defendant's professional relationship with Jonathan (*see, e.g.*, Compl. ¶¶ 14–15; Pl.'s 56.1 ¶¶ 2–3, 8), and plaintiffs have proffered evidence supportive of fraudulent billing before October 2000. Specifically, plaintiffs have proffered evidence that defendant fraudulently misrepresented to George from day one that he was seeing Jonathan three times per week (and billing George accordingly) while he was in fact seeing him "at most" once a week (Pl.'s 56.1 ¶¶ 2–3). Such evidence forecloses an entry of summary judgment in defendant's favor. Additionally, there is some evidence in the record which raises genuine issues of material fact as to defendant's claim that plaintiffs made no payments to defendant after October 2000, to wit, two checks, both dated November 20, 2000, made out to defendant in the amounts of $1,263.00 and $1,167.00. (Douglas Aff. Ex. F.) These checks raise questions of fact on the question of George's injury post-October 2000.

Defendant's second argument is that George did not suffer any injury because Carofino P.C., and not George in his personal capacity, was the party who actually paid defendant. Plaintiffs counter by stating that, while payment was made by Carofino P.C., George was the ultimate payor. As the sole owner and principal of Carofino P.C., a professional corporation, George personally paid back to the corporation all amounts that had been paid to defendant. (Pl.'s Mem. Opp'n Summ. J. 12; G. Carofino Decl. ¶¶ 21–23.)

■ While "[i]t is generally the case that a cause of action to recover damages for fraud requires, *inter alia*, a showing

---

4. Defendant only challenges this one element of plaintiffs' fraud claim.

5. This presumption overlooks plaintiffs' argument that they had foregone obtaining other

treatment for Jonathan in reliance on defendant's alleged misrepresentations. The Court need not reach this argument, though, given its findings above.

that a false representation was made to the injured party, for the purpose of inducing reliance thereon, and reasonable reliance by the injured party," *Buxton Mfg. Co., v. Valiant Moving & Storage, Inc.,* 239 A.D.2d 452, 657 N.Y.S.2d 450, 451 (App.Div.1997), it is also true that "[a] third party can recover damages for a fraudulent misrepresentation if he can establish that he relied upon it to his detriment, and that the defendants intended the misrepresentation to be conveyed to him," *Peerless Mills, Inc. v. Am. Tel. & Tel. Co.,* 527 F.2d 445, 450 (2d Cir.1975); *accord Rosen v. Spanierman,* 894 F.2d 28, 33 (2d Cir.1990) (same); *Chase Manhattan Bank, N.A. v. Fidata Corp.,* 700 F.Supp. 1252, 1261 (S.D.N.Y.1988) (same).

■ Consequently, even assuming that defendant's purported fraudulent misrepresentations were made to Carofino P.C. as a business entity, George, as a third-party, is not foreclosed from bringing this claim if he can establish that he personally relied upon the misrepresentations, and that defendant intended his misrepresentations to be conveyed to George. Plaintiffs have, accordingly, pointed to evidence in the record supportive of these elements of fraud. George's deposition testimony and declaration demonstrate that defendant represented to him that he would begin seeing Jonathan three times per week, (G. Carofino Dep. 31:5–12), and George paid defendant accordingly (G. Carofino Decl. ¶¶ 16–19; Douglas Aff. Exs. F, N; *see also* G. Carofino Dep. 35:4–36:22), while defendant was, in reality, seeing Jonathan less than three times per week (J. Carofino Dep. 22:6–24:19).

Defendant also argues in his brief that George's claim for damages stemming from his own " 'emotional distress' " are not recoverable under New York law on the ground that George is a relative of an individual bringing a medical-malpractice claim. (Def.'s Mem. Supp. Summ. J. 12.) Turning to the complaint to discern exactly what damages defendant refers to, the phrase "emotional distress" is included in neither the medical-malpractice count nor the fraud count. Both counts, however, refer to "emotional pain and anguish." (Compl.¶¶ 10–18.) The Court has already found that the medical-malpractice claim is brought solely by Jonathan. The question whether George is entitled to damages for emotional pain and anguish flowing from any fraud perpetrated on him is easily answered in the negative.

■ Under New York law, on a claim for fraud, " '[t]he true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong' or what is known as the 'out-of-pocket' rule." *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1373 (1996) (quoting *Reno v. Bull,* 226 N.Y. 546, 124 N.E. 144, 146 (1919)). "Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud." *Id.* at 1374; *accord Toho Bussan Kaisha, Ltd. v. Am. Pres. Lines, Ltd.,* 265 F.2d 418, 421–22 (2d Cir. 1959) (Lumbard, J.) ("The New York decisions make it plain that the recovery allowable for fraud is not punitive in nature. The plaintiff is entitled to be indemnified only for actual pecuniary loss."). Indeed, "damages recoverable for fraud do not include emotional distress." *Jeffrey BB v. Cardinal McCloskey Sch. & Home for Children,* 257 A.D.2d 21, 689 N.Y.S.2d 721, 723 (App.Div.1999). Consequently, the Court finds as a matter of law that George may not recover damages for emotional distress on his claim for fraud.

### 4. *George's Unjust Enrichment Claim*

Defendant's argument in support of summary judgment with respect to

George's unjust enrichment claim (Def.'s Mem. Supp. Summ. J. 9–10) mirrors the argument he makes with respect to plaintiffs' fraud claim: Because the claim is a reiteration of the medical-malpractice claim, it cannot stand on the ground that case law compels that such duplicative claims be barred. *See, e.g., Gotlin v. Lederman*, 367 F.Supp.2d 349, 360 (E.D.N.Y. 2005).

■ This argument fails for the same reason defendant's motion as to plaintiffs' fraud claim fails, namely, George is not the party bringing the medical-malpractice claim and, therefore, his unjust enrichment claim is not a reiteration of a medical-malpractice claim. The Court finds that plaintiffs have raised genuine issues of material fact as to all three elements of their claim for unjust enrichment. First, plaintiffs have introduced evidence supportive of the assertion that defendant benefited from its relationship with plaintiffs, to wit, his receipt of payment for treatment billed for but never actually provided to Jonathan. (*See* G. Carofino Decl. ¶¶ 16–19; Douglas Aff. Exs. F, N; *see also* G. Carofino Dep. 35:4–36:22.) Second, this enrichment was at plaintiffs' expenses because it constituted a direct financial loss to George. (*See* Douglas Aff. Exs. F, N.) Third, and finally, the Court believes that the totality of the circumstances, *see, e.g., Lake Minnewaska Mountain Houses Inc. v. Rekis*, 259 A.D.2d 797, 686 N.Y.S.2d 186, 188 (App.Div.1999) (looking to the "totality of the circumstances" when evaluating this third prong), as alleged and factually supported by plaintiffs, at the very least raise issues of fact as to whether equity and good conscience would permit defendant to retain any monies gained as a consequence of fictitious billings made to an individual who, based on plaintiffs proffered facts, is now in a severely diminished mental state.

(*See, e.g.*, Goldstein Exp. Report at Giordano Aff. Ex. G at 6–7.)

## V. *Defendant's In Limine Motion*

■ A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*. *See Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Indeed, "[t]he purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996) (internal quotation marks omitted); *see also Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ. 3796, 2005 WL 1026515, at *3 (S.D.N.Y. May 2, 2005) ("The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.") (Leisure, J.). "The court's ruling regarding a motion *in limine* is 'subject to change when the case unfolds.'" *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 01 Civ. 3796, 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004) (quoting *Luce*, 469 U.S. at 41, 105 S.Ct. 460). This Opinion and Order, then, constitutes a preliminary determination subject to change. *Id.*

### A. *The Parties' Arguments*

Defendant argues that evidence concerning defendant's conviction for, *inter alia*, health care fraud should not be admissible at trial. Defendant admits that he pled guilty in March 2003 to an indictment issued in the Southern District of New York charging him with health care fraud and the making of certain false statements in connection therewith. (Def.'s 56.1 ¶ 5;

Douglas Aff. Ex. P.) The subject of the indictment was defendant's submission of bills to Jonathan's insurance carrier, Fortis, for appointments that Jonathan did not actually attend between October 2000 and the summer of 2001. (Def.'s 56.1 ¶ 5.)

Defendant first argues that because he was convicted of health care fraud committed after October 2000, and thus, in his view, after George ceased making payments to defendant, such fraudulent billing has no bearing on the alleged fraud that plaintiffs allege to have occurred before October 2000.[6] Second, he argues that, even if relevant, such evidence should be excluded under Rule 404(b) because the only purpose for which plaintiffs would seek to admit it would be to demonstrate defendant's "bad character." (Def.'s Mem. Supp. Summ. J. 14–15.) Third, defendant argues that the evidence of his prior conviction could never pass the Rule 403 hurdle because the undue prejudice accorded to him in a jury's mind would substantially outweigh any probative value the Court finds the evidence to have. (Def.'s Mem. Supp. Summ. J. 15–16.)

Plaintiffs argue that they would not offer defendant's fraud conviction for the purpose of establishing his bad character or to demonstrate that he committed malpractice, but "in order to establish the very fraud for which Forester was convicted." (Pl's Mem. Opp'n Summ. J. 16.) Under plaintiffs' view, the fraudulent billing for which defendant was convicted was part and parcel of "one continuous overall fraudulent scheme" and, consequently, the fraud for which defendant was convicted is highly probative and relevant as to the fraud alleged herein. (Pl's Mem. Opp'n Summ. J. 16.) Given the relevancy of the evidence, plaintiffs then contend that the evidence would in fact pass a Rule 403 balancing analysis.[7]

### B. *Rule 404(b)*

Federal Rule of Evidence 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). The Second Circuit follows an "inclusionary" approach to "other crimes, wrongs, or acts" evidence, that is, such evidence is admissible to prove matters other than the defendant's criminal propensity. *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir.1996); *United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988); *Ismail v. Cohen*, 706 F.Supp. 243, 252 (S.D.N.Y.1989) (Leisure, J.), *aff'd in part, rev'd in part*, 899 F.2d 183 (2d Cir. 1990).

The Supreme Court, in *Huddleston v. United States*, outlined the follow-

---

6. In his brief, defendant first promotes an argument based on the assumption that summary judgment will have been granted in his favor on plaintiffs' fraud and unjust enrichment claims. The argument is that any evidence concerning defendant's conviction for false billings made *after* George ceased making payments to defendant is wholly immaterial to the question whether he committed malpractice in treating Jonathan. (Def.'s Mem. Supp. Summ. J. 13–14.) Having denied in part defendant's motion on those two counts, however, the Court focuses only on defendant's other argument.

7. Plaintiffs also reference Federal Rule of Evidence 609 in their brief. The Court solely addresses defendant's motion for the exclusion of certain evidence pursuant to Federal Rule of Evidence 404(b). Plaintiffs may, of course, bring an *in limine* motion or motion at trial concerning Rule 609.

ing four-part test for the admission of other acts evidence under Rule 404(b):

> First, the evidence must be introduced for a proper purpose, such as proof of knowledge or identity. Second, the offered evidence must be relevant to an issue in the case pursuant to Rule 402, as enforced through Rule 104(b). Third, the evidence must satisfy the probative-prejudice balancing test of Rule 403. Fourth, if the evidence of other acts is admitted, the district court must, if requested, provide a limiting instruction for the jury.

*United States v. Gilan,* 967 F.2d 776, 780 (2d Cir.1992) (citing *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (Rehnquist, C.J.)); *accord United States v. Downing,* 297 F.3d 52, 58 (2d Cir.2002) (same); *United States v. Ramirez,* 894 F.2d 565, 568 (2d Cir.1990) (same).

### 1. *Proper Purpose*

 Plaintiffs claim in their opposition papers that the admission of defendant's prior conviction would not be offered to prove defendant's propensity, but instead to demonstrate the existence of a "pattern" of activity encompassing both the fraudulent acts defendant was convicted for and the fraudulent acts alleged herein. (Pl.'s Mem. Opp'n Summ. J. 15–16.) Plaintiffs are correct in their assertion that evidence demonstrative of pattern is admissible under Rule 404(b). *See, e.g., Ismail,* 899 F.2d at 188 (characterizing the establishment of "pattern" as a legitimate ground for admitting prior-act evidence under Rule 404(b)).

The "pattern" ground for admission under Rule 404(b) is more often referred to as a common scheme or plan. *See generally* 2 Margaret A. Berger & Jack B. Weinstein, *Weinstein's Federal Evidence* § 404.22[5][a] (Joseph M. McLaughlin ed.,

2d ed. 2005) ("Other-crime evidence may be admissible if the other act or crime is part of a common scheme or plan that includes the charged offense."). In *United States v. O'Connor,* 580 F.2d 38, 41 (2d Cir.1978), the Second Circuit held that the concept of common scheme or plan applies to myriad factual patterns, which can be grouped into two major areas: "[t]he first includes other crimes evidence demonstrating a connected or inseparable transaction"; "[t]he second subcategory of common plan involves similar act testimony constituting a continuing scheme or conspiracy." The first grouping includes evidence "designed '[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place,' " *id.* (quoting McCormick, *McCormick on Evidence* § 190, at 448 (2d ed.1972)), while the second "concern[s] similar acts evidence offered to show the existence of a definite project intended to facilitate completion of the crime in question," *id.* at 41–42. The Second Circuit noted that evidence offered to establish a common scheme or plan will not always fall neatly into one sub-grouping or the other; indeed, it may encompass characteristics of both. *See id.* at 41.

Here, the Court finds that the evidence of defendant's conviction exhibits characteristics of both groups: It is offered to complete a story of defendant's ongoing fraud by demonstrating that similar acts occurred very near in time and place to those acts at issue in this case; and it is also offered to show the existence of a definite project that defendant was undertaking. (*See* Pl.'s Mem. Opp'n Summ. J. 16 ("Forester's fake billing was part and parcel of one continuous overall fraudulent scheme and, as such, the conviction based on a sampling of those fraudulent acts are highly probative and relevant to other specific fraudulent transactions that are

equally part of the overall pattern of fraud.").)

### 2. *Relevancy*

 Plaintiffs' permissible purpose for offering the prior-act evidence under Rule 404(b) is limited, however, in that the purpose is justified only so long as the second *Huddleston* factor is met—viz., the underlying evidence is relevant to an issue in the case. *See, e.g., United States v. Reed,* 639 F.2d 896, 906–07 (2d Cir.1981) (holding that evidence of contemporaneous fraudulent stock trading in an action concerning other fraudulent stock trading was admissible to show intent where the question of intent to execute a scheme to defraud was in); *see also United States v. Gilan,* 967 F.2d 776, 780 (2d Cir.1992); 22 Charles A. Wright et al. *Federal Practice & Procedure* § 5244, at 500–01 (1978 & Supp.2006) (stating that where "plan or design is not an element of the offense[,] ... evidence that shows a plan must be relevant to some ultimate issue in the case").

Pursuant to Federal Rule of Evidence 401, " '[r]elevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401 (emphasis added); *Huddleston v. United States,* 485 U.S. 681, 687, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (defining as relevant "evidence that makes the existence of any fact at issue more or less probable"). Plaintiffs will bear the burden at trial of demonstrating the fact that defendant made a material misrepresentation (or omission) of fact to George—i.e., that defendant misrepresented to him that he would see Jonathan three times per week. *See, e.g., Crigger v. Fahnestock & Co.,* 443 F.3d 230, 234 (2d Cir.2006).

The fact of such misrepresentation(s) is thus clearly consequential to the Court's determination of this action. Surely, evidence that defendant made false misrepresentations to an insurance carrier concerning how many times per week he saw a particular patient both immediately after and during the period when he was seeing Jonathan tends to make more probable the alleged fact that he was making the same false misrepresentations to George. When considering the fact that the fraudulent misrepresentations for which defendant was convicted were for fictitious sessions *with Jonathan,* such evidence is, *a fortiori,* probative. The Court thus finds that a reasonable jury could find this evidence to be relevant by a preponderance of the evidence. *See United States v. Ramirez,* 894 F.2d 565, 569 (2d Cir.1990).

### 3. *Rule 403 Balancing*

 All evidence tending to demonstrate a defendant's liability, by its nature, will be prejudicial in some respect to the defendant; Rule 403 is designed to exclude only *unfair* prejudice. *See Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 151 (2d Cir.1997) ("Although any evidence that tends to establish liability is prejudicial to the interests of the defendant, the prejudice is unfair only if the evidence has 'an undue tendency to suggest decision on an improper basis.' " (quoting Fed.R.Evid. 403 advisory committee note)); *United States v. Ozsusamlar,* 428 F.Supp.2d 161, 170 (S.D.N.Y.2006) (Leisure, J.) (describing as impermissibly prejudicial evidence which " 'tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence' " (quoting *United States v. Figueroa,* 618 F.2d 934, 942 (2d Cir.1980) (Newman, J.))).

 While the Court recognizes the potential prejudice that may accrue to de-

fendant, it also believes that such prejudice does not substantially outweigh its probative value given the strength of the evidence and the ameliorative effect a proper limiting instruction would have. First, the temporal connection between the fraud for which defendant was convicted, and for which he is alleged to have committed herein, is strong: the time period for the former both overlapped with, and immediately followed, the fraud alleged in this suit. *See Ismail v. Cohen,* 706 F.Supp. 243, 253 (S.D.N.Y.1989) (Leisure, J.) ("Rule 404(b) specifically provides for the admission of evidence of other wrongs or acts, either prior to or subsequent to the incident in question, which are relevant to an actual issue in the case."), *aff'd in part, rev'd in part,* 899 F.2d 183 (2d Cir.1990). Further, the nature of the fraud is extremely similar; indeed, the fraud for which defendant was convicted is the same exact type of fraud of which defendant is accused in this case. The evidence is thus admissible under Rule 403.

### 4. *Limiting Instruction*

Finally, the Court will provide an appropriate limiting instruction at trial if so requested. *See United States v. Gilan,* 967 F.2d 776, 780 (2d Cir.1992).

### VI. *Plaintiffs' Cross–Motion for Rule 11 Sanctions*

Plaintiffs argue in their brief in opposition to defendant's motions that, "[g]iven the obviousness of the fraud and pecuniary damages suffered by George ..., [d]efendant's motion to dismiss the fraud claim on this ground is frivolous and in clear violation" of Federal Rule of Civil Procedure 11. (Pl.'s Mem. Opp'n Summ. J. 13.)

 Federal Rule of Civil Procedure 11(c)(1)(A) requires a party seeking to bring a motion for sanctions to do so by a motion "made separately from other motions or requests," and only after having first served its adversary with the motion at least twenty-one days before filing the motion with the Court. Fed.R.Civ.P. 11(c)(1)(A); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1337, at 707–08 (3d ed. 2004) ("[A] motion requesting sanctions must be made separately from other motions and .... must comply with a 'safe harbor' provision by serving the motion for sanctions upon the opposing party at least twenty-one days before filing the motion with the district court.") As noted, plaintiffs' motion is included in its opposition brief and not in a separate motion. Nor is there any evidence in the record that plaintiffs served a copy of any motion on defendant at least twenty-one days prior to serving the Court.[8] The Court need not reach the flimsiness of plaintiffs' substantive argument because they have failed to comply with the Rule 11's procedural requirements. *See Hadges,* 48 F.3d at 1327–28.

### CONCLUSION

For the foregoing reasons, defendant's summary judgment motion is GRANTED IN PART and DENIED IN PART; defendant's *in limine* motion is DENIED; and plaintiffs' cross-motion for sanctions is DENIED. The parties are ORDERED to appear before this Court at 500 Pearl Street, Courtroom 18b, for a status conference on September 13, 2006 at 10:30 a.m. unless a motion is pending.

**SO ORDERED.**

---

8. The e-mail communications between counsel discussing plaintiffs' threats to bring a Rule 11 motion (Giordano Aff. Ex. I) do not constitute the service of a motion.