Leslie Block KAYE, Plaintiff–Appellee,

v.

Marc E. GROSSMAN, Defendant,

Laura Anne Grossman, Defendant–Appellant.

Docket No. 99–7571

United States Court of Appeals, Second Circuit.

Submitted Jan. 10, 2000.

Decided Feb. 1, 2000.

Leslie Block Kaye, Dill, Dill, Carr, Stonbraker & Hutchings, Denver, CO, submitted a brief for plaintiff-appellee.

Joel Martin Aurnou, White Plains, NY, submitted a brief for defendant-appellant.

Before: WALKER, NEWMAN, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Defendant-appellant Laura Anne Grossman appeals from a judgment entered on

April 19, 1999 by the United States District Court for the Southern District of New York (Richard Owen, Judge) in favor of plaintiff-appellee Leslie Block Kaye on Kaye's claims of fraud, promissory estoppel, and unjust enrichment. Following a jury verdict in favor of Kaye, the court denied Grossman's motion for judgment as a matter of law. For the reasons that follow, we reverse.

## BACKGROUND

Plaintiff-appellee Leslie Block Kaye is an attorney practicing in Denver, Colorado. In the early 1980s, Kaye became acquainted with defendant Marc Grossman, also an attorney, in New York. The two became friendly, and Kaye began referring cases to Marc and otherwise communicating with him professionally until she moved from New York to Arizona in 1988. After leaving New York, Kaye heard from Marc only sporadically.

In January 1993, Marc contacted Kaye to request a $50,000 loan. According to Kaye, Marc informed her that he was·desperate and that the money was a matter of life and death for his children. Though Kaye initially refused the loan, after repeated requests she relented and agreed to wire Marc the money. In return, Marc agreed to prepare a promissory note arranging for repayment of the loan at eight percent interest.

Kaye wired $50,000 to Marc on January 26, 1993. Marc sent no promissory note in return, however, nor did he contact Kaye for several months. When Kaye eventually called Marc at his office, he at first assured her that he would repay the loan, but soon stopped returning her phone calls. Kaye then called Marc's home and spoke to his then-wife, defendant-appellant Laura Grossman, about the loan. Between late 1993 and July 1994, Kaye spoke to Laura several times regarding her desire for repayment. According to Kaye, Laura assured her during these conversations that Kaye would be repaid from the proceeds of the upcoming sale of the Grossmans' home. In January 1995, Kaye sent Laura a letter stating that because Kaye was reluctant to file suit for the money, she was "rely[ing] on your word that you are an honorable person and will see that I am paid back following your sale of the house." Over the next few months, Kaye sent Laura several similar letters, repeatedly indicating that she was relying on a promise by Laura to repay the loan out of the proceeds from the sale of the Grossmans' home.

In February 1996, Kaye prepared a promissory note for the loan and sent it to Laura. Laura requested that Kaye revise the note to provide that demand would not be made until January 25, 1997 or the sale of the Grossmans' "marital residence," whichever came first. Kaye made the revisions and sent the note to Marc, who executed it on April 15, 1996. Laura did not sign the note.

At some point, Kaye learned that the $50,000 she had lent Marc had gone not to pay for an emergency relating to the Grossmans' children, but to replace client escrow funds that Marc had converted and to pay other expenses Marc had accumulated in the course of his legal practice. In 1996, in fact, Marc became the subject of a grievance proceeding before the bar association for converting his clients' escrow funds. As a result of this misconduct, Marc was disbarred in July 1996 and subsequently pled guilty to a state charge of grand larceny. Laura and Marc began divorce proceedings in 1995.

In June 1997, Laura sold the Grossmans' marital home, to which she held the title, for $880,000. After paying debts and other expenses, Laura retained approximately $48,000, but did not repay the loan out of the house proceeds. Kaye filed suit in November 1997 against both Laura and Marc for, *inter alia,* common law fraud based on their failure to repay the loan. Kaye also brought claims against Laura for promissory estoppel and unjust enrichment, alleging that she had relied to her

detriment on Laura's promise of repayment out of the house proceeds and claiming that Laura had benefitted from the loan to Marc at Kaye's expense. On motions for summary judgment, Judge Jed S. Rakoff, to whom the case was then assigned, granted summary judgment against Marc on a contract claim based on the note and granted summary judgment in favor of Laura on Kaye's contract claim against her.

At the close of trial in March 1999, the jury returned a verdict in favor of Kaye on all remaining claims. On the fraud count, the jury awarded Kaye $50,000 in compensatory damages against both Marc and Laura, with eight percent interest calculated from the date of the loan. The jury also awarded Kaye punitive damages of $50,000, plus interest, on her fraud claim against Laura and $100,000, plus interest, in punitive damages against Marc. In addition, the jury found that Kaye was entitled to $50,000, plus interest, in compensatory damages on her promissory estoppel and unjust enrichment claims against Laura. The court subsequently denied the defendants' motions for judgment as a matter of law and entered judgment ordering Marc and Laura Grossman, jointly and severally, to pay $50,000 in compensatory damages, $24,865.75 in interest, and $304.00 in taxable costs. The court also ordered Laura to pay $50,000 and Marc to pay $100,000 in punitive damages. Laura now appeals from that judgment.

## DISCUSSION

■■■ We review *de novo* a trial court's denial of judgment as a matter of law. *See Muller v. Costello*, 187 F.3d 298, 312 (2d Cir.1999). In reviewing the court's decision, we must draw all inferences and view all evidence in the light most favorable to the non-moving party. *See id.* We may only set aside a jury verdict "when there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer

surmise and conjecture." *Id.* (citations and internal quotation marks omitted).

### I. *Fraud*

■■■ To prevail on a fraud claim under New York law,[1] a plaintiff must establish five elements by clear and convincing evidence: 1) the defendant made a material misrepresentation; 2) the defendant knew of its falsity; 3) the defendant possessed an intent to defraud; 4) the plaintiff reasonably relied on the misrepresentation; and 5) the plaintiff suffered damage as a result of the misrepresentation. *See Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir.1997). To support her claim for fraud, Kaye argues that Laura misled her by promising that she would repay the money out of the proceeds from the sale of the Grossmans' house when Laura in fact had no intention of doing so. As a result, Kaye claims, she refrained from filing suit against Marc for the $50,000, believing that she would be repaid when the house was sold. Kaye argues that had she filed suit against Marc earlier, she would have enjoyed priority over his other creditors and thus would have been able to collect the money before he became judgment-proof. Assuming, *arguendo*, that Kaye successfully established the first four elements of her fraud claim against Laura, we nonetheless vacate the fraud verdict because Kaye failed to show any injury resulting from Laura's alleged misrepresentation.

■■■ To prove damage in a fraud action, a plaintiff must demonstrate that the defendant's conduct proximately caused her economic harm. *See Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir.1993). A fraud verdict may not rest on allegations of speculative or remote injury to the plaintiff; rather, the plaintiff must have suffered losses as a "direct, immediate, and proximate result" of the defendant's misrepresentation. *Id.* Kaye failed at trial to proffer evidence of any such injury.

1. The parties do not dispute that New York law applies in this diversity action.

Although Kaye testified that she believed she would have been able to collect a judgment from Marc had she sued him earlier, she offered no evidence in support of this theory. With respect to Marc's capacity for repayment, Kaye testified that she knew of no assets held by Marc other than "his" house and income generated from his law practice. In order to establish that the alleged misrepresentation damaged her, therefore, Kaye would have had to show that, had she sued earlier, Marc would have been able to pay her out of funds deriving from one or both of these assets. The record demonstrates, however, that Kaye could have collected nothing against the house at any point, because Laura held sole title to that property. As for Marc's law practice, Kaye offered no evidence indicating the value of the business or even whether it was profitable. The mere fact that Marc owned a law practice does not support Kaye's claim of economic injury resulting from the alleged fraud. Moreover, Kaye offered no evidence showing when other creditors asserted their claims or demonstrating that her claim would have taken priority had she sued earlier.[2]

In sum, nothing in the record before the jury indicates that Marc would have been able to repay Kaye regardless of when she sued. Because Kaye failed to demonstrate economic injury by clear and convincing evidence, judgment as a matter of law in favor of Laura was appropriate.[3]

**II.  Promissory Estoppel**

A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance. *See Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 301 (2d Cir.1996). Even if we assume *arguendo* that Kaye established the first two of these elements—that Laura made an unambiguous promise to repay Kaye after selling the Grossmans' home and that Kaye reasonably and foreseeably relied on that promise in delaying the filing of a lawsuit—we must vacate the promissory estoppel judgment because Kaye failed to establish injury as a result of her reliance on Laura's promise of repayment. As we determined with respect to the fraud count, *supra,* Kaye did not demonstrate at trial that, had she filed suit earlier, she would have been able to collect any money from Marc. She therefore cannot satisfy the "injury" element of her promissory estoppel claim. *Cf. Silver v. Mohasco Corp.,* 94 A.D.2d 820, 462 N.Y.S.2d 917, 920 (3d Dep't 1983) (affirming dismissal of promissory estoppel claim because "plaintiff has not alleged any substantial and concrete injury caused by a failure to keep the alleged promise"), *aff'd,* 62 N.Y.2d 741, 476 N.Y.S.2d 822, 465 N.E.2d 361 (Ct.App. 1984).

**III.  Unjust Enrichment**

Finally, Kaye argues that she is entitled to recover from Laura for unjust

---

**2.** In an attempt to show that Kaye suffered no damages, Laura's attorney attempted at trial to enter into evidence two documents showing that as of December 1994, a judgment for $750,000 had already been filed against Marc in a malpractice case. According to Laura's counsel, these documents demonstrated that even had Kaye filed suit as early as December 1994, she would have been unable to collect because this $750,000 judgment would have had priority over her claim. Kaye objected to the documents, however, on the ground that they were irrelevant. The record is unclear as to whether the court ultimately admitted these documents over Kaye's objection. We note that exclusion of this evidence likely would have been improper, as it supports both defendants' argument that Kaye suffered no economic injury as a result of the alleged misrepresentation. Because we find that Kaye adduced insufficient evidence to support a fraud verdict in any event, however, we need not reach this evidentiary issue.

**3.** Because we find the evidence insufficient to support the verdict in favor of Kaye on the fraud claim, we also vacate that portion of the judgment ordering Laura to pay punitive damages.

enrichment because Kaye's $50,000 loan allegedly went to pay family expenses, in which Laura shared. To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that "equity and good conscience" require restitution. *See Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir.1983). The "essence" of such a claim "is that one party has received money or a benefit at the expense of another." *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (4th Dep't 1999). To support the jury verdict finding unjust enrichment, therefore, Kaye must demonstrate that Laura received some benefit from Kaye's loan to Marc.

Because Kaye proffered insufficient evidence to support a finding that Laura actually benefitted from the loan, we reverse the verdict in favor of Kaye on this claim as well. The evidence adduced at trial shows that Marc alone benefitted from the money he borrowed from Kaye. Specifically, Marc testified that of the $50,000, $20,000 went to replace the illegally converted escrow funds, $16,000 went toward rent for his office space, and an unspecified amount went to other small expenses. He further testified that his wife knew nothing about the loan before Kaye contacted her regarding repayment, and that the money went solely toward business-related rather than family-related expenses. Laura similarly stated that she knew nothing of the loan or of any "family emergency" it might have covered.

Kaye did testify that Laura supposedly received some benefit from the loan, stating that when she spoke to Laura on the telephone, Laura "acknowledged that the money was lent to the family" and told Kaye that "but for [Kaye's] loan, her daughter would not have been able to continue at Duke University." While this testimony may suggest that Laura received some indirect benefit from the loan, however, it does not establish the specific and direct benefit necessary to support an un-

just enrichment claim. *Cf. Wolf v. National Council of Young Israel*, 264 A.D.2d 416, 694 N.Y.S.2d 424, 426 (2d Dep't 1999) (finding cause of action for unjust enrichment where plaintiff's son used defendant's money to pay plaintiff's property taxes). Kaye offered no evidence demonstrating that Laura actually received any portion of the loan, nor did she show that the loan relieved Laura of any financial obligations for which she otherwise would have been responsible. In these circumstances, we cannot sustain the jury's conclusion that Laura herself benefitted from the loan to her husband. We therefore reverse the verdict on Kaye's unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, we reverse and remand with instructions to enter judgment in favor of appellant Laura Grossman.