**Rufus KILGORE, Plaintiff,**

v.

**OCWEN LOAN SERVICING, LLC, Defendant.**

**No. 13–cv–5473 (JFB)(SIL).**

United States District Court, E.D. New York.

Signed March 6, 2015.

**530**

Michael E. Herskowitz, Michael Lehrman, The Hoffman Law Group, P.A., Brooklyn, NY, for Plaintiff.

Brian M. Forbes, Robert B. Allensworth, Robert W. Sparkes, K & L Gates LLP, Boston, MA, David S. Versfelt, Kirkpatrick Lockhart Preston Gates Ellis LLP, New York, NY, for Defendant.

### MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

Defendant Ocwen Loan Servicing ("defendant" or "Ocwen") moves to dismiss, under Federal Rule of Civil Procedure 12(b)(6), plaintiff Rufus Kilgore's ("plaintiff") claims alleging violations of federal and New York state law in connection with his application for a home mortgage modification. Originally, plaintiff had commenced this action as one of thirty-seven plaintiffs asserting claims against defendant as well as another loan servicer, in connection with separate and unrelated mortgage transactions. The claims of all the plaintiffs except for plaintiff Kilgore were voluntarily dismissed on April 30, 2014, and plaintiff filed an amended complaint against defendant Ocwen alone on May 30, 2014.

The gravamen of plaintiff's complaint is that Ocwen operated a fraudulent loan modification program without intent to actually provide modifications to any homeowners. The factual allegations underlying that theory, however, are vague, and plaintiff's allegations with respect to his own personal application to defendant's program are contradictory and conclusory. In any event, plaintiff asserts seven claims against defendant: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) fraudulent concealment; (5) violation of Section 349 of the New York General Business Law ("GBL"); (6) unjust enrichment; and (7) violation of the Real Estate Settlement Procedures Act ("RESPA").[1]

For the reasons discussed below, the Court grants defendant's motion to dismiss. However, the Court grants plaintiff leave to re-plead his claims, with the exception of the unjust enrichment claim.

---

1. The Court notes that several other courts in this Circuit have recently dismissed similar cases brought by the same plaintiff's counsel, alleging parallel factual situations and theories of law. *See, e.g., Yanes v. Ocwen Loan Servicing, LLC,* No. 13–CV–2343(JS)(ARL), 2015 WL 631962 (E.D.N.Y. Feb. 12, 2015); *Miller v. HSBC Bank U.S.A., N.A.,* No. 13 Civ. 7500, 2015 WL 585589 (S.D.N.Y. Feb. 11, 2015); *Arroyo v. PHH Mortg. Corp.,* No. 13–CV–2335(JS)(AKT), 2014 WL 2048384 (E.D.N.Y. May 19, 2014).

## I. Background

The following facts are taken from the amended complaint. The Court assumes them to be true for the purpose of deciding this motion, and construes them in the light most favorable to plaintiff, the non-moving party.

Plaintiff has a mortgage on his home in Westbury, New York, that is serviced by defendant. (Am. Compl. at ¶ 5.) Plaintiff alleges that after the announcement of the Home Affordable Modification Program ("HAMP") by the federal government in late 2008, which encouraged lenders like defendant to offer home mortgage modifications to homeowners, he was "encouraged by defendant's marketing" to seek a loan modification. (*Id.* at ¶¶ 7–8.) Plaintiff states that, under the terms of the HAMP and other federal homeowner assistance programs, defendant was "obligated to make extensive efforts to modify qualified loans to reduce the burden on borrowers." (*Id.* at ¶ 7.) Plaintiff alleges that he was provided an application package by defendant and that defendant represented that, following the submission and review of a completed modification package, plaintiff would be given trial modification payment terms, which would become a permanent modification if plaintiff made the necessary payments. (*Id.* at ¶¶ 11–12.) Plaintiff states that he "accepted defendant's offer" and submitted all the necessary documents, believing that, by submitting the application package, defendant was "bound to perform its obligation of granting a modification," and "a contract was formed, binding defendant and its successors in interest." (*Id.* at ¶¶ 13–15.)

Plaintiff claims, however, that Ocwen had "implemented procedural safeguards to ensure that plaintiff remains in default on his loan." (*Id.* at ¶ 10.) Plaintiff alleges that defendant "sought to make the modification process as onerous and complicated as possible," and that defendant subsequently refused to provide plaintiff with a modification or a written denial of his application. (*Id.* at ¶¶ 16–17.) Plaintiff alleges that he called Ocwen to inquire about his modification, but the representative informed him that it did not have a record of his application; plaintiff then states that defendant rejected his "subsequent modification applications through a supposed pre-screening modification review ... based on erroneous claims about plaintiff's financial situation and nature of the loan." (*Id.* at ¶¶ 18–19.) Plaintiff claims that he met the conditions precedent to obtaining a modification, and that if defendant had actually conducted a financial analysis, "it would have resulted in appropriate modification," so his modification was improperly denied. (*Id.* at ¶¶ 22–24.) Plaintiff eventually defaulted on his mortgage. (*Id.* at ¶ 47.)

Plaintiff alleges that the modification pre-screening process was designed to allow Ocwen to reject applicants without thoroughly reviewing them, and that essentially "defendant has been operating a fraudulent loan modification program." (*Id.* at ¶¶ 21, 38.) According to plaintiff, numerous financial factors incentivized defendant not to offer modifications to qualified homeowners, and its program was never intended to operate on a good faith basis in dealing with plaintiff or other modification-seekers. (*Id.* at ¶¶ 26–40.) Plaintiff alleges that, after learning of "various improper practices and illegal abuses," he submitted a Qualified Written Request ("QWR") under the RESPA, where he disputed the validity of his debt and requested further information on the servicing of his loan. (*Id.* at ¶¶ 42–44.) Plaintiff alleges that to date defendant has failed to respond to the QWR, in violation

of its requirements under the RESPA. (*Id.* at ¶¶ 42–45.)

The original complaint in this action was filed on October 2, 2013, by plaintiff and thirty-six other plaintiffs against defendant and another loan servicer. The claims by the other plaintiffs were withdrawn voluntarily on April 30, 2014, and plaintiff filed an amended complaint with respect to his claims only on May 30, 2014. Defendant moved to dismiss the amended complaint on July 30, 2014. Plaintiff filed his opposition on February 5, 2015, and defendant filed its reply in support of the motion on February 19, 2015. Oral argument was held on March 4, 2015.

This matter is fully submitted, and the Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir.2010). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth two important considerations for courts deciding a motion to dismiss. 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937 (explaining that though "legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678, 129 S.Ct. 1937 (quoting and citing *Twombly,* 550 U.S. at 556–57, 127 S.Ct. 1955 (internal citation omitted)).

## III. DISCUSSION

The Court will address each of plaintiff's claims in turn.

### A. Breach of Contract

▮▮▮▮ "[A]n action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir.1994). "Under New York law, whether a binding agreement exists is a legal issue, not a factual one." *Vacold LLC v. Cerami,* 545 F.3d 114, 123 (2d Cir.2008). In order to prove the first element with respect to the existence of a contract, "a plaintiff must plead the provisions of the contract upon which the claim is based." *James v. Countrywide Fin. Corp.,* 849 F.Supp.2d 296, 322 (E.D.N.Y.2012) (citation omitted); *see also Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank,* No. 11 Civ. 4491, 2013 WL 1294519, at *13 (S.D.N.Y. Mar. 30, 2013) (plaintiff must "at a minimum set forth the terms of the agreement" upon

which a breach of contract claim is based), *aff'd*, 552 Fed.Appx. 13 (2d Cir.2014). The contract itself need not be attached to the complaint, but the pleading must at least set forth the terms by express reference to satisfy this requirement. *James*, 849 F.Supp.2d at 322.

■ In the introduction of his complaint, plaintiff makes clear that his breach of contract claim is based on a theory that he "sought a permanent loan modification agreement" from Ocwen, but that his applications were rejected without proper justification, which frustrated his "performance under his trial modification contracts." (Am. Compl. at 1.) However, plaintiff does not plead, either by attaching the contract or by reference, the terms of any trial modification he was granted, let alone a permanent modification. In fact, other sections of his complaint appear to imply that plaintiff was never even granted a trial modification, only that he submitted application materials to initiate the process that would begin with a trial modification that could eventually become permanent. (*See id.* at ¶¶ 11–19 (plaintiff submitted the application package for a trial modification, after which he expected to "be given terms to make payments as part of a trial modification," but was rejected).) Despite plaintiff's allegations to the contrary, submitting an application to Ocwen's loan modification program does not create a binding agreement. Under New York law, defendant was under no obligation to modify the terms of plaintiff's mortgage. *See Miller*, 2015 WL 585589, at *3 (collecting cases); *Fournier v. Bank of America Corp.*, No. 5:13–CV–00702, 2014 WL 421295, at *7 (N.D.N.Y. Feb. 4, 2014).

Plaintiff's argument in opposition relies on Federal Rule of Civil Procedure 9(c), which states that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred." Plaintiff argues he has adequately pled that he fulfilled all conditions precedent to obtaining a modification, but was prevented from perfecting an agreement by the defendant's policies and review process.

As several courts in the Second Circuit have recently noted, this argument is unavailing because pleading the fulfillment of conditions precedent does not adequately allege the existence of a modification agreement. *See, e.g., Miller*, 2015 WL 585589, at *4 ("Plaintiff's contention regarding conditions precedent fails, not because she inadequately alleged satisfaction of certain conditions, but because she failed to sufficiently allege the existence of an agreement to modify her loan.") (citing *Arroyo v. PHH Mortg. Corp.*, No. 13–CV–2335 (JS)(AKT), 2014 WL 2048384, at *7–9 (E.D.N.Y. May 19, 2014)); *Yanes*, 2015 WL 631962, at *3 ("Whether or not Yanes properly alleged that he satisfied certain conditions is irrelevant, since the terms of the contract were not properly pled."). Without setting forth the terms and provisions to support the existence of an agreement, a breach of contract claim cannot lie. In fact, plaintiff's allegations with respect to his loan modification application are devoid of any details with respect to when the application was sent and received, to whom it was sent, or any other identifying information.[2]

For these reasons, plaintiff's breach of contract claim is dismissed.

---

**2.** Plaintiff in fact alleges that he, at some unknown time, telephoned defendant to inquire about his application, and defendant "stated that defendant had no records of any modification application submitted." (Am. Compl. at ¶ 18.)

## B. Breach of the Implied Covenant of Good Faith and Fair Dealing

"In New York, it is well-settled that the common law duty of good faith and fair dealing exists solely as an implicit contractual right; any breach of this duty is therefore considered a breach of the underlying contract." *Toto, Inc. v. Sony Music Entm't*, No. 12 Civ. 1434(LAK)(AJP), 2012 WL 6136365, at *13 (S.D.N.Y. Dec. 11, 2012), report & recommendation adopted, 2013 WL 163826 (S.D.N.Y. Jan. 15, 2013) (citing *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 83 (2d Cir.2002)). Therefore, "[a] breach of the implied covenant of good faith and fair dealing is merely a breach of the underlying contract." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 452 (E.D.N.Y.2013) (citation and internal quotation marks omitted). Without an underlying binding contract, there can be no breach of the implied covenant of good faith and fair dealing. *See id.; Arroyo*, 2014 WL 2048384, at *9 (plaintiff must first allege existence of valid contract to support a claim for breach of the implied covenant of good faith and fair dealing).

As discussed above, plaintiff failed to adequately plead the existence of a binding agreement with defendant. Therefore, this claim must be dismissed as well.

## C. Promissory Estoppel

Plaintiff also brings a claim for promissory estoppel against Ocwen. Under New York law, to state a claim for promissory estoppel, a plaintiff must allege: "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir.2000). "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel"; the alleged promise must be clear and unambiguous. *Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, No. 11 CIV. 6345(RJS), 2012 WL 3930112, at *6 (S.D.N.Y. Sept. 10, 2012).

As discussed above, Kilgore simply alleges that defendant represented to him that "following the submission and review of a completed modification package, plaintiff would be given terms to make payments as part of a trial modification. If plaintiff made the necessary monthly payments under the terms of the trial modification a permanent modification would be perfected." (Am. Compl. at ¶ 12.) This is precisely the same language used in the plaintiff's complaint in *Yanes*. 2015 WL 631962, at *4. As discussed above, plaintiff's allegations merely describe a generalized offer to apply for a trial modification, not a binding agreement or a contract with specified terms. Indeed, as should be obvious from the individualized nature of a home mortgage and a modification application, terms would differ on a case-by-case basis. As plaintiff appears to admit in his amended complaint, he never even received trial modification terms from defendant. (Am. Compl. at ¶¶ 11–19.)

This Court, like the *Yanes* court, finds that this alleged promise is neither clear nor unambiguous, and therefore plaintiff has not adequately stated a claim for promissory estoppel. Therefore, this claim is dismissed.

## D. Fraudulent Concealment

A claim for fraudulent concealment must comply with the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to allege their fraud claims with "particularity." The heightened pleading requirement is designed to "(1) provid[e] a defendant

fair notice of plaintiff's claim, to enable preparation of defense; (2) protect[ ] a defendant from harm to his reputation or goodwill; and (3) reduc[e] the number of strike suits." *DiVittorio v. Equidyne Extractive Indus. Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

Furthermore, under New York law, " '[t]o state a cause of action for fraud [based on misrepresentation], a plaintiff must show an intentional misrepresentation of a material fact resulting in some injury.' " *Malmsteen v. Berdon, LLP,* 477 F.Supp.2d 655, 663 (S.D.N.Y.2007) (quoting *Held v. Kaufman,* 91 N.Y.2d 425, 671 N.Y.S.2d 429, 694 N.E.2d 430, 433 (1998)). "A claim for fraud based on concealment, in addition to a showing of an intentional failure to disclose a material fact reasonably resulting in injury, requires plaintiff to demonstrate that defendant had a duty to disclose material information." *Id.* (citing *Swersky v. Dreyer & Traub,* 219 A.D.2d 321, 643 N.Y.S.2d 33, 36 (1996)). Therefore, to adequately plead a claim for fraudulent concealment, plaintiffs must allege with particularity such facts as who made the misrepresentation, when and where it was made, and the content. *See, e.g., IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993) (citing *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990)).

Kilgore, however, only makes general allegations with respect to misrepresentations by Ocwen. For example, he alleges defendant "used fraud and artifice to keep plaintiff in default on his mortgage by promising opportunities for loan modification when it had no intention of providing such permanent modification," or defendant "did not disclose to plaintiff its motives to see plaintiff remain in default on his mortgage rather than offer a modification." (Am. Compl. at ¶¶ 65, 67.) These conclusory allegations, devoid of detail about the misrepresentations, cannot support a fraudulent concealment claim. Crucially, plaintiff does not state any facts whatsoever to support his allegation that Ocwen owed him some sort of duty. As discussed above, plaintiff has not adequately alleged any sort of agreement at all with defendant with respect to a mortgage modification, so the relationship or duty upon which this claim is based is unclear. *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,* 85 F.Supp.2d 282, 296 (S.D.N.Y.2000) (plaintiff must allege facts to show defendant had a duty to disclose), *aff'd,* 2 Fed.Appx. 109 (2d Cir.2001).

Therefore, plaintiff's allegations supporting his fraudulent concealment claim are deficient, and the claim must be dismissed.

E. New York General Business Law Section 349

Plaintiff also asserts a claim under Section 349 of the GBL. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. G.B.L. § 349(a). To state a claim under Section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000).

Under this provision, "the gravamen of the complaint must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995) (internal citation and quotation marks omitted). The critical question is whether "the acts or practices have a broad [ ] impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Mid-*

*land Bank, N.A.,* 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (1995); *see, e.g., Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47, 51–53 (2d Cir.1992) (holding Section 349 applicable to insurers where plaintiffs demonstrated that similar practices had been employed by defendant against multiple insureds). "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *New York v. Feldman,* 210 F.Supp.2d 294, 301 (S.D.N.Y.2002) (collecting cases). However, where a plaintiff only makes conclusory allegations about misrepresentations affecting consumers generally, a Section 349 claim must be dismissed.[3] *See Miller,* 2015 WL 585589, at *8 (citations omitted); *Harary v. Allstate Ins. Co.,* 983 F.Supp. 95, 99 (E.D.N.Y.1997) (finding plaintiff's allegation that defendant injured public at large through its denial of plaintiff's claim to be too conclusory to support Section 349 claim); *Grand Gen. Store, Inc. v. Royal Indem. Co.,* No. 93 Civ. 3741(CSH), 1994 WL 163973, at *4 (S.D.N.Y. Apr. 22, 1994) (dismissing Section 349 claim because plaintiff failed "to include any evidence of the existence of a claim settlement policy designed to deceive the public at large," and simply stating that "[s]uch conduct was and is part and parcel of a scheme to cause low payment of claims by economic duress and unfair claims practices" without support is insufficient).

▪ The Court finds—as the courts in *Miller,* 2015 WL 585589, at *8–9, *Arroyo,* 2014 WL 2048384, at *11, and *Yanes,* 2015 WL 631962, at *5, did with nearly identical allegations and theories—that the conclusory allegations of generalized consumer injury here are insufficient to support a

plausible Section 349 claim. Kilgore argues that defendant's conduct caused harm to the public interest because he alleged in the amended complaint that Ocwen's "fraudulent" modification program purported to offer the "possibility" of a modification to plaintiff and other homeowners, and that the misrepresentations about the program were "directed to hundreds of thousands of consumer-homeowners whose loans have been serviced by defendant," (Am. Compl. at ¶¶ 38, 80.) Plaintiff's pleading, however, lacks specificity both about (a) what representations made by defendant were misleading, and (b) how those alleged misrepresentations were made to the public at large. Even with respect to the misrepresentations made to plaintiff personally, he merely alleges he was "encouraged by defendant's marketing to seek mortgage assistance." (*Id.* at ¶ 8.) The amended complaint is bereft of any detail about what the marketing materials were, what they said, how they were distributed, and so forth. Simply speculating that misrepresentations were broadcast to all of Ocwen's homeowners is insufficient to support a plausible Section 349 claim, similar to the deficient claim of a policy "designed to deceive the public at large" without specific allegations in *Grand General Store,* 1994 WL 163973, at *4; *see also Yanes,* 2015 WL 631962, at *5 ("Although Yanes speculates that other consumers were treated similarly to him, he does not allege any facts to support that assertion."). Therefore plaintiff fails to satisfy the first and second elements required to plead a Section 349 claim.

▪ Moreover, even assuming *arguendo* that plaintiff satisfactorily alleged a misleading modification policy advertised by Ocwen generally, plaintiff fails to plead

---

**3.** Plaintiff does not argue that the representations made in the initial complaint with re-

spect to the other 36 plaintiffs have any bearing on this claim.

the third element, *i.e.* what damages were caused to him and to the other homeowners by the alleged deceptive·practices. The amended complaint broadly states that "[t]he unfair and deceptive trade acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and consumers at large." (Am. Compl. at ¶ 82.) This allegation—the same verbatim allegation as the court in *Arroyo* dealt with, 2014 WL 2048384, at \*11—is plainly deficient. "Alleging causation, and how the alleged acts have caused the alleged injury, is essential." *Id.* (citing *Abraham v. Am. Home Mortg. Serv., Inc.*, 947 F.Supp.2d 222, 234–35 (E.D.N.Y.2013)), *see also Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 74 (S.D.N.Y.2006) ("The causation element is essential: The plaintiff . . . must show that the defendant's material deceptive act caused the injury. In addition, a plaintiff must prove actual injury to recover under the statute, though not necessarily pecuniary harm.") (citations and internal quotation marks omitted). Here, the Court is unable to discern from the face of the complaint what injury is alleged, let alone how any alleged misrepresentations about the possibility of mortgage modifications caused said injury. Without that detail, no plausible Section 349 claim may lie.

For these reasons, this claim must be dismissed.

## F. Unjust Enrichment

■■■■■ "Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: 'To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir.2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). An unjust enrichment claim "may be asserted only in the absence of an agreement between the parties—be it oral, written, or implied-in-fact." *Altaire Pharm., Inc. v. Rose Stone Enters.*, No. 13–CV–4373 (JFB)(WDW), 2013 WL 6235862, at \*7 (E.D.N.Y. Dec. 3, 2013) (citing *Beth Israel Med. Ctr.*, 448 F.3d at 586–87).

■■■■ Plaintiff's claim under a theory of unjust enrichment is premised on the assertion that "[b]y preventing plaintiff from making reduced monthly payments, defendant caused plaintiff's debt to increase, and further interest to accrue on the loan principal." (Am. Compl. at ¶ 90.) ˙ This allegation is, again, identical to the one made by the plaintiff in *Miller*, 2015 WL 585589, at \*9–10. The "debt" and "principal" referred to by Kilgore in the amended complaint, however, were created by plaintiff's underlying mortgage agreement. *See also Fournier*, 2014 WL 421295, at \*7 ("Interest accrued on the loan because, by her own admission, Plaintiff voluntarily stopped making mortgage payments."). Although plaintiff fails to establish the existence of any· agreement to modify his mortgage, there can be no dispute that he had previously "executed a promissory note . . . secured by a mortgage against" his property. (Am. Compl. at ¶ 5.) The payments due were created by plaintiff's signing of that note, before any applications for a mortgage modification had been submitted, and before plaintiff defaulted on his mortgage. The accrual of interest over time on an obligation is not a penalty or an injury to the payor, but " '[r]ather, it is simply the cost of having the use of another person's money for a specified period.' " *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 727 F.Supp.2d 256, 295 (S.D.N.Y.2010) (quoting *Love v.*

*State of N.Y.*, 78 N.Y.2d 540, 577 N.Y.S.2d 359, 583 N.E.2d 1296, 1298 (1991)). The fact that plaintiff was "prevent[ed] ... from making reduced monthly payments" by defendant's denial of his modification application does not affect plaintiff's obligation to continue making his mortgage payments. (Am. Compl. at ¶ 89.) The Court finds unconvincing plaintiff's argument that his failure to make his payments due while applying for a modification (and eventual default) is somehow an enrichment of defendant—and, in any event, there existed an underlying agreement.

Therefore, because plaintiff fails to establish the absence of an agreement, this claim must also be dismissed.

### G. RESPA

Plaintiff's final cause of action seeks damages for defendant's alleged violation of the RESPA. Plaintiff claims that Ocwen failed to fully respond to inquiries submitted in plaintiff's QWR within the allotted sixty-day period, in violation of 12 U.S.C. § 2605(e). (Am. Compl. at ¶ 95.) Plaintiff also claims that, because his QWR also qualified as a "notice of error" under 12 C.F.R. § 1024.35(e), defendant also violated 12 C.F.R. § 1024.35(e)(3) by failing to respond within thirty days. (Am. Compl. at ¶ 97.) Plaintiff also alleges that defendant violated 12 C.F.R. § 1024.41(c) by "failing to provide written notice of the determination in plaintiff's application for loan modification."

 With respect to the first two issues, plaintiff's claim is deficient because he again fails to plead adequate supporting facts. To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a QWR or notice of error. *See Miller*, 2015 WL 585589, at *10 (collecting cases). Plaintiff simply pleads conclusorily that he submitted a QWR/notice of error, adding that in his request he "formally pointed to error and disputed the validity of his current debts with defendant," and requested further information. (Am. Compl. at 42–44.) Such a non-specific allegation is insufficient to support a plausible claim under the RESPA. *See also Fournier*, 2014 WL 421295, at *5 ("Plaintiff failed to allege, in non-conclusory terms, that any of her four alleged QWRs complied with the statutory definition of a QWR.").[4]

 With respect to the third issue regarding defendant's failure to respond in writing to plaintiff's modification application as required by Section 1024.41(c), a claim to enforce that provision can only be brought pursuant to Section 2605. *See* 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)). Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to

---

4. Additionally, as the court in *Miller* noted, there is no private cause of action for an alleged violation of Section 1024.35. 2015 WL 585589, at *11 ("Miller's 'claim' based upon 12 C.F.R. § 1024.35 also fails because that regulation does not provide a private right of action for damages. Instead, the only effect that receipt of a notice of error has is to prohibit a mortgage servicer, for sixty days after receipt of a notice of error, from furnishing 'adverse information to any consumer reporting agencies regarding any payment that is the subject of the notice of error.' ") (citing 12 C.F.R. § 1024.35(i)(1)).

the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law."). Though here the alleged violation is based on defendant's failure to respond in writing, plaintiff has not adequately pled facts supporting the allegation that he submitted a modification application. Without those allegations, the Court cannot evaluate whether defendant failed to comply with this regulation, and the claim is deficient.

 Moreover, with respect to all the RESPA issues raised by plaintiff, to survive a motion to dismiss a plaintiff bringing a RESPA claim must, in addition to showing defendant's failure to comply with the provisions, identify damages that he or she sustained as a result of defendant's alleged violation(s). Specifically, to state a Section 2605 claim, a plaintiff "must sufficiently allege one of two types of damages: (1) 'actual damages to the borrower as a result of the failure' to comply with § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605." *Gorbaty v. Wells Fargo Bank, N.A.*, 10–CV–3291 (NGG)(SMG), 2012 WL 1372260, at *3 (E.D.N.Y. Apr. 18, 2012) (quoting 12 U.S.C. § 2605(f)).

 Here, Kilgore seeks actual damages for defendant's alleged failures with respect to his individual case. "A plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA." *Id.* at *5. Thus, to survive a motion to dismiss, the complaint must contain "factual allegation[s] suggesting that any damages [plaintiff] suffered were proximately caused by [defendant's] violations of § 2605," and conclusory allegations to that effect will not suffice. *Id.* at *16–17 (explaining that alleging damages is not enough, but that a plaintiff must

"explain how th[ose] problems were caused specifically by [defendant's] alleged § 2605 violations"); *see also Corazzini v. Litton Loan Servicing LLP*, 1:09–cv–199 (MAD/ATB), 2010 WL 6787231, at *12, 2011 U.S. Dist. LEXIS 63565, at *37 (N.D.N.Y. June 15, 2010) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff." (citation and internal quotation marks omitted)).

In this case, plaintiff simply asserts that he "suffered financial loss and severe mental anguish and emotional distress of facing the loss or possible loss of his home through foreclosure" proximately caused by defendant. (Am. Compl. at ¶ 99.) This language is, yet again, identical to that in the *Yanes* and *Miller* cases. *Yanes*, 2015 WL 631962, at *7; *Miller*, 2015 WL 585589, at *11–12. Both courts found this statement to be conclusory and unsupported, therefore failing as a matter of law. *See also Roth v. CitiMortgage, Inc.*, No. 12–CV–2446, 2013 WL 5205775, at *7 (E.D.N.Y. Sept. 11, 2013) (RESPA claim failed because plaintiff failed to plead actual financial damages or any facts to support that the alleged violations were the proximate cause of emotional harm); *Gorbaty*, 2012 WL 1372260, at *5 (dismissing claim because "Gorbaty's Complaints contain only conclusory allegations that she has suffered actual damages, and no factual allegation suggesting that any damages she suffered were proximately caused by Wells Fargo's violations of § 2605. Gorbaty alleges that she has suffered harm as a result of Defendant Wells Fargo['s] actions and omissions, that she is on the verge of losing her house, and that she would have walk[ed] away from the loan if she had known the truth about its terms … but she provides no factual allegation linking

her·alleged harms to Wells Fargo's failure to timely respond to her QWRs or its provision of loan documents that were inconsistent with documents she had received earlier.") (citations and internal quotation marks omitted). This Court agrees. Although Kilgore argues that his complaint is sufficiently detailed, the Court concludes that the allegations are insufficient to articulate a plausible claim for the reasons discussed in *Miller* and *Yanes* (and the other cases where substantively similar language also has been found to deficient).

For these reasons, plaintiff's RESPA claim must be dismissed as well.

### H. Leave to Amend

 Having concluded that plaintiff has failed to state any plausible claims, the Court has considered whether he should be afforded an opportunity to amend his complaint. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir.2002); *see Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998) (finding that leave to amend may be denied based upon the "futility of amendment"). As to futility, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.,* if it appears beyond doubt that the plaintiff[s] can plead no set of facts that would entitle [them] to relief." *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001) (citing

*Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).

Here, the amended complaint is the first operative pleading in which plaintiff's claims stand apart from those of the original group of plaintiffs. Although the amended complaint lacks sufficient allegations to articulate plausible claims, plaintiff may be able to cure these defects with additional factual allegations with respect to, *inter alia,* the existence of agreements, any communications or transmission of letters, and damages. The Court, therefore, will grant plaintiff leave to re-plead his claims with further particularized factual allegations within thirty days, with the exception of his unjust enrichment claim which fails as a matter of law because of the existence of the underlying mortgage agreement. That claim is dismissed with prejudice because any attempt to re-plead that claim would be futile.

### IV. Conclusion

The Court grants defendant's motion to dismiss the complaint in its entirety. If plaintiff wishes to file a second amended complaint to re-plead his breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraudulent concealment, GBL Section 349, and RESPA claims, he may do so within thirty days of this order. The unjust enrichment claim is dismissed with prejudice. If plaintiff does not amend his complaint, the remainder of the claims will be dismissed with prejudice as well.

SO ORDERED.